UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GERALD ALSTON,
Plaintiff,

v. CIVIL ACTION NO. 15-13987-GAO

TOWN OF BROOKLINE, MASSACHUSETTS; BROOKLINE BOARD OF SELECTMEN; BETSY DEWITT, in her individual and official capacities; KENNETH GOLDSTEIN, in his individual and official capacities; NANCY DALY, in her individual and official capacities; JESSE MERMELL, in her individual and official capacities; NEIL WISHINSKY, in his individual and official capacities; BERNARD GREENE, in his individual and official capacities; BEN FRANCO, in his individual and official capacities; NANCY HELLER, in her individual and official capacities; SANDRA DEBOW, in her individual and official capacities; JOSLIN MURPHY, in her individual and official capacities; STANLEY SPIEGEL, in his individual capacity; and LOCAL 950, INTERNATIONAL ASSOCIATION OF FIREFIGHTERS,
Defendants.

# REPORT AND RECOMMENDATION ON DEFENDANT STANLEY SPIEGEL'S MOTION TO DISMISS (#80).

KELLEY, U.S.M.J.

## I. Introduction.

Plaintiff Gerald Alston brought this action against the Town of Brookline (the Town); the Brookline Board of Selectmen (the Board); various individuals who are either currently or at

some point relevant to this action were serving as selectmen on the Board (the Selectmen);[1] the Human Resources Director for the Town, Sandra Debow; Town Counsel, Joslin Murphy; the union of firefighters to which plaintiff belonged, Local 950, International Association of Firefighters; and Stanley Spiegel, a Town Meeting member and member of the Town's Advisory Committee[2]; alleging violations of 42 U.S.C. §§ 1981, 1983, and 1985 stemming from an ongoing policy and practice of racial discrimination in the Town governance. (#78.) Defendant Spiegel filed a motion to dismiss all claims against him (#80); Alston responded in opposition (#84); and Spiegel filed a reply to plaintiff's opposition (#95).

II. Procedural History.

The original complaint in this action was filed on December 1, 2015 (#1). Two months later, on January 26, 2016, plaintiff added seven plaintiffs in an amended complaint (#21). All

[1] The Selectmen are: Betsy DeWitt, 2006 to 2015, (#78 ¶ 5); Jesse Mermell, 2010 to 2013, *id.* ¶ 6; Kenneth Goldstein, 2009 to 2015, *id.* ¶ 7; Neil Wishinsky, 2013 to present, *id.* ¶ 8; Nancy Daly, 2005 to present, *id.* ¶ 9; Bernard Greene, 2015 to present, *id.* ¶ 10; Ben Franco, 2014 to present, *id.* ¶ 11; Nancy Heller, 2015 to present, *id.* ¶ 12.

[2] The second amended complaint provides no explanation as to the function of either of these bodies. (*See* #78.) This failure was evident in the first amended complaint and noted by the court in its first Report and Recommendation. (*See* #21; #72 at 33 n. 17.) Comparison of the first and second amended complaints reveals that plaintiff largely ignored this court's earlier findings as they pertain to defendant Spiegel, and simply recycled portions of the first amended complaint with cosmetic changes. As a result, the court again turns to the Town's website to determine what role Spiegel played in the Town government. On a motion to dismiss, the court may consider "matters of public record, and other matters susceptible to judicial notice." *Lydon v. Local 103, Int'l Bhd. of Elec. Workers*, 770 F.3d 48, 53 (1st Cir. 2014); *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). The court takes judicial notice of the Town's website. The "Town Meeting is Brookline's legislative arm of government . . . [and] consists of 240 elected Town Meeting members . . . ." *Town Meeting*, BROOKLINEMA.GOV, http://brooklinema.gov/264/Town-Meeting (last visited Jan. 31, 2017). The Advisory Committee "consists of 20-30 registered voters of the Town[.]"*Advisory Committee*, BROOKLINEMA.GOV, http://brooklinema.gov/166/Advisory-Committee (last visited Jan. 31, 2017). The "primary function of the Advisory Committee is to review and make recommendations on all matters to be considered by Town Meeting." *Id.* Advisory Committee members are appointed by the Town Moderator, an elected position, and "shall consider any and all municipal questions, including appropriation requests and proposed action under all articles in the warrant for a Town Meeting, for the purpose of making reports and recommendations to the Town." (#78 ¶ 13); TOWN OF BROOKLINE GENERAL BY-LAWS (2015), *available at* http://brooklinema.gov/DocumentCenter/Home/View/353.

defendants moved to dismiss the first amended complaint (##34, 36, 45, 52) and plaintiffs opposed (##40, 56, 64). This court's Report and Recommendation on defendants' motions to dismiss (#72) recommended that the claims of all plaintiffs be severed and dismissed without prejudice for failure to comply with the pleading requirements set forth in Rule 8 of the Federal Rules of Civil Procedure, save for those against defendant Spiegel for which the court recommended that all claims be dismissed with prejudice due to plaintiffs' failure to state a claim and Spiegel's entitlement to the defense of qualified immunity. (*See* #72.) Judge O'Toole, the district court judge to whom this case is assigned, reviewing the Report and Recommendation on the motions to dismiss, adopted all of the court's recommendations with the caveat that, in the interest of fairness, the claims against Spiegel be dismissed without prejudice, and Alston and the other plaintiffs be given leave to replead their claims against all defendants.[3] (#75.) Thereafter, Alston filed his second amended complaint. (#78.)

III. The Facts.

The relevant facts as set forth in the second amended complaint are as follows.[4] In 2002, Alston, who is Black, started working for the Brookline Fire Department (the Department) as a firefighter. (#78 ¶¶ 1, 19.) On May 30, 2010, a lieutenant in the Department left a voicemail on Alston's phone in which the lieutenant called Alston a racial slur. *Id.* ¶ 20. Alston reported the

[3] Alston was the only plaintiff who asserted claims against Spiegel. (*See* #21.)

[4] The allegations in the second amended complaint seek to establish an ongoing practice and policy of racial discrimination in the Town. (*See, e.g.*, #78 ¶¶ 40-65, the "Unconstitutional Policy" section in which a number of accusations, many of which fail to identify the victim or actor, spanning several decades are limned.) The second amended complaint contains a number of facts and allegations that do not pertain to defendant Spiegel, whose allegedly harmful conduct is limited to two incidents: one in 2013 and another 2014. *Id.* ¶¶ 115-125. Because in its first Report and Recommendation the court provided a detailed recitation of the facts as alleged in the first amended complaint, over which there is much overlap with the second amended complaint, the court will confine its factual recitation to the facts germane to Spiegel.

lieutenant's comment to the Department's chief operating officer, but no corrective action was taken. *Id.* ¶ 22. The matter was eventually taken up by the Board, the entity responsible for hiring, firing, and disciplining the Town's firefighters. *Id.* ¶¶ 4, 23. Alston alleges that the Selectmen failed to take appropriate action and protected and rewarded the lieutenant instead of disciplining him for his racist remark. *Id.* ¶¶ 23, 24. Since the 2010 incident, Alston has been the victim of ongoing punishment in the form of, among other things, the Town's[5] ignoring his complaints; concealing the truth; encouraging other firefighters' ostracization of Alston; insufficiently investigating the matter; and constantly harassing Alston. *Id.* ¶ 25.

In the fall of 2013, the Town increased its efforts to discredit Alston's claims and force him out of the Department on a pretextual basis. *Id.* ¶ 28. On September 19, 2013, Spiegel, who is White, distributed a "letter to the editor,"[6] via email, to members of the Town Meeting.[7] *Id.* ¶¶ 13, 117-118. The letter, authored by a retired Black fire lieutenant, had been distributed at a public meeting the day before by Selectwoman Daly and attacked Alston's courage and credibility and cast him in a negative light. *Id.* ¶ 117. In the same email, Spiegel directed Town Meeting members to a quote from Selectwoman Daly taken from that day's local paper in which she cautioned against a rush to judgment before the remainder of the facts of Alston's complaint could be made public. *Id.* ¶ 118. In the email, Spiegel echoed Selectwoman Daly's sentiments about reserving judgment and noted that the letter provided some additional insight. *Id.*

[5] The second amended complaint repeatedly refers to actions taken by the Town, but does not identify the actor(s) responsible. (*See* #78.) From all that can be gleaned from the second amended complaint, it appears that these alleged actions were taken by the Board or some of its selectmen. *Id.*

[6] The second amended complaint does not specify for which media source the letter was intended.

[7] The second amended complaint does not identify the Town Meeting members to whom the letter was distributed. (*See* #78 ¶¶ 117-118.)

In 2014, the Town ultimately placed Alston on unpaid leave with the intent to terminate his employment. *Id.* ¶ 28. On December 3, 2014, Alston's case was reported in several area news publications. *Id.* ¶ 119. At some point thereafter, in response to plaintiff's public protest of his treatment, the Town retaliated against Alston by providing Spiegel with access to Alston's personnel file. *Id.* ¶ 120. On or around December 9, 2014, Spiegel told several people gathered in the selectmen's public meeting room that he had such access as a result of his position as a Town Meeting member.[8] *Id.* Spiegel also told a woman who was wearing an "I support Gerald Alston" sticker (the Alston supporter) that she would not support Alston if she knew the real story contained in his personnel file, but that she was not allowed to access the file. *Id.* ¶¶ 31, 121. Spiegel represented to the Alston supporter that he was speaking on behalf of the Town. *Id.* Additionally, while in front of the Alston supporter and two other individuals, Spiegel falsely stated that two Black firefighters told him they did not support Alston. *Id.* ¶ 122. When questioned about his statements, Spiegel allegedly grew extremely agitated and put his face close to the supporter's face and raised his voice. *Id.* ¶ 123. The conversation ultimately terminated when Spiegel shouted "I'm disgusted" and left the room. *Id.*

On February 13, 2015, in response to a public protest of the Town's annual Martin Luther King, Jr. celebration, Alston was placed on paid administrative leave. *Id.* ¶ 31. Alston asserts that despite the Selectmen's publicly conciliatory stance towards him, "they tacitly encouraged their unofficial surrogates, including advisory committee member and town meeting member, Stanley Spiegel to smear Mr. Alston and undermine public support for him." [9] *Id.* On February

---

[8] It is unclear from the facts alleged whether Spiegel was entitled to access to Alston's personnel file based on his role in the Town government. The second amended complaint simply states that the Town's sharing of this information constituted a form of retaliation. (#78 ¶ 120.)

[9] The second amended complaint is devoid of any definition or explanation as to what the label of "unofficial surrogate" entails, despite plaintiff's repeated assertion that several individuals acted in this

16, 2016, the Board terminated Alston's paid administrative leave. *Id.* ¶ 37. Alston was formally dismissed from his position as a firefighter by a unanimous vote of the Board on October 5, 2016. *Id.*

IV. Standard of Review.

A Rule 12(b)(6) motion to dismiss challenges a party's complaint for failing to state a claim. In deciding such a motion, a court must "'accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor.'" *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (quoting *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 5 (1st Cir. 2011)). When considering a motion to dismiss, a court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Haley*, 657 F.3d at 46 (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)).

In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "obligation to provide the grounds of [the plaintiff's] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotation marks and alteration omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level," and to cross the "line from conceivable to plausible." *Id.* at 555, 570.

---

capacity on behalf of the Board. (*See* #78 ¶¶ 13, 31, 37, 40, 116.) Defendant Spiegel, in his memorandum in support of the motion to dismiss, notes Alston's failure to support his surrogacy argument, yet Alston does not address the matter in his opposition. (*Compare* #81 at 2-3, *with* #84.) With respect to Spiegel, the second amended complaint merely states "Mr. Spiegel acts as an unofficial surrogate for the Selectmen by defending their conduct publicly and attacking perceived and actual critics of the Board and the Town, frequently in consultation with individual members of the Board." (#78 ¶ 116); *see also id.* ¶¶ 13, 31.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). However, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). Simply put, the court should assume that well pleaded facts are genuine and then determine whether such facts state a plausible claim for relief. *Id.* at 679.

V. Discussion.

Judge O'Toole previously ordered that the first amended complaint should be dismissed with leave to amend. (*See* #75.) As noted above, *supra* n. 2, the changes made from the first to the second amended complaint with respect to defendant Spiegel are minimal. Comparison of the two documents reveals that many of the facts and allegations were simply copied and repled in a different paragraph structure. (*Compare, e.g,* #21 ¶ 230, *with* #78 ¶¶ 120-122, 124.) The only arguably substantive changes in the new complaint are as follows: (1) labeling Spiegel an "unofficial surrogate" of the Board, (*see* #78 ¶¶ 13, 31, 116); (2) the addition of two sentences describing Spiegel's conduct when he confronted the Alston supporter, *see id.* ¶ 123; and (3) additional information about the letter Spiegel circulated to Town Meeting members and a comment Spiegel made at that time, *see id.* ¶¶ 117-118.

Alston alleges that Spiegel violated 42 U.S.C. §§ 1981, 1983, and 1985 by: enforcing the Town's unconstitutional policy, practice, and custom; retaliating against plaintiff for opposing the Town's unconstitutional and racist policy; and discriminating against plaintiff on the basis of race. (#78 ¶¶ 133-139.) Spiegel and Alston incorporate by reference their earlier memoranda in support of and opposition to Spiegel's first motion to dismiss, Alston's objection to this court's

previous Report and Recommendation, Spiegel's reply, and Spiegel's motion for reconsideration. (*See* #81 at 1, incorporating by reference ##45, 48, 54, 55, 65, 76, 77; #84 at 2,[10] incorporating by reference ##56,[11] 73.) The court will consider arguments contained in previous filings to the extent that they pertain to the allegations set out in the second amended complaint.[12]

This court, in its Report and Recommendation on Spiegel's first motion to dismiss, concluded that Alston "failed to state a claim against Spiegel under *any* actionable legal theory . . . [and] ha[d] not met the core requirement of any discrimination claim, which is that he suffered some deprivation of a right, privilege, or immunity because of his race." (#72 at 35) (emphasis in original). Alston again fails to clear this hurdle. In addition, several of Alston's other claims fail for other reasons.[13]

A. 42 U.S.C. § 1983.

Section 1983 is a procedural mechanism through which constitutional and statutory rights are enforced. *Albright v. Oliver*, 510 U.S. 266, 270 (1994). "The statute . . . 'is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred . . . by the United States Constitution and federal statutes.'" *Bibiloni Del Valle v. Puerto Rico*, 661 F. Supp.

[10] Plaintiff's opposition to defendant's motion to dismiss is incorrectly paginated and lists page 2 as page 1. (*See* #84 at 2.) The court will refer to the pages in the document as docketed.

[11] Plaintiff's opposition to defendant's first motion to dismiss is incorrectly paginated and lists page 2 as page 3. (*See* #56 at 2.) The court will refer to the pages in the document as docketed.

[12] There is subject matter in the documents incorporated by reference that is outside of the court's purview for purposes of the motion to dismiss. (*See, e.g.*, #56 at 16 Plaintiffs' Opposition to Defendant Spiegel's [First] Motion to Dismiss and for Rule 11 Sanctions, quoting and referencing a social media post that is not contained in the second amended complaint.)

[13] The parties contest Spiegel's entitlement to qualified immunity, (*see* #81 at 5; #84 at 7-8; #95 at 7-9), however, the court does not reach the issue, given that Alston fails to make out a *prima facie* case under any of the claims pled against Spiegel.

2d 155, 177 (D.P.R. 2009) (quoting *Rodriguez–Garcia v. Municipality of Caguas,* 354 F.3d 91, 99 (1st Cir. 2004)). The federally protected rights in issue here are Alston's First Amendment rights to freedom of speech and to petition the government for redress of grievances. (#78 ¶ 134.)

The elements of a First Amendment retaliation claim under § 1983 are (1) speech "protected under the First Amendment so as to shield [plaintiff] from adverse employment action in retaliation for such speech," (2) an adverse employment action, and (3) a causal connection between the protected speech and the adverse action. *Gagliardi v. Sullivan*, 513 F.3d 301, 306 (1st Cir. 2008) (quoting *Curran v. Cousins*, 509 F.3d 36, 45 (1st Cir. 2007)); *see also Najas Realty, LLC v. Seekonk Water Dist*., 821 F.3d 134, 141 (1st Cir. 2016).

Adverse employment action is a necessary element for all of Alston's claims. *See Sullivan v. City of Springfield*, 561 F.3d 7, 14 (1st Cir. 2009) (discrimination under § 1983); *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996) (discrimination and retaliation under § 1985); *Cabi v. Boston Children's Hosp.*, 161 F. Supp. 3d 136, 157 (D. Mass. 2016) (retaliation under § 1981); *Hall v. FMR Corp.*, 667 F. Supp. 2d 185, 198 (D. Mass. 2009) (discrimination under § 1981). Thus, the failure to allege sufficiently an adverse employment action under § 1983, as defined by the law of this circuit, will remove the linchpin from Alston's remaining claims, leaving them unsustainable.

> [T]he adverse employment action inquiry in the section 1983 context focuses on whether an employer's acts, viewed objectively, place substantial pressure on the employee's political views – or, more generally, on whether the defendants' acts would have a chilling effect on the employee's exercise of First Amendment rights. . . .
>
> Thus, the pertinent question in a § 1983 retaliation case based on the First Amendment is whether the defendant's actions would deter a reasonably hardy individual[ ] from exercising his constitutional rights.

*Barton v. Clancy*, 632 F.3d 9, 29 (1st Cir. 2011) (some alteration in original) (internal citation and quotation marks omitted).

The determination as to what actions give rise to § 1983 liability is context specific. *See id.* at 29-30 (collecting cases). That said, the court is guided by cases on which the *Barton* court and others of this circuit have relied in analyzing adverse employment action under § 1983. The common thread throughout the relevant case law is the existence of numerous, ongoing, interconnected incidents that result in a "campaign" or "pattern" of harassment. *See, e.g.*, *McKee v. Hart*, 436 F.3d 165, 170–71 (3d Cir. 2006) (distinguished in *Barton*) (three comments by a supervisor that were critical of the plaintiff's job performance did not rise to the level of a "*campaign of retaliatory harassment*") (emphasis added); *Coszalter v. City of Salem*, 320 F.3d 968, 976–77 (9th Cir. 2003) (cited with approval in *Barton*) (concluding that the acts in issue, when taken together, amounted to "a severe and sustained *campaign of employer retaliation*") (emphasis added); *Pieczynski v. Duffy*, 875 F.2d 1331, 1336 (7th Cir. 1989) (cited with approval in *Barton*) ("a *campaign of petty harassments* can violate the First Amendment (unless *de minimis*)") (some emphasis added); *McGunigle v. City of Quincy*, 132 F. Supp. 3d 155, 175 (D. Mass. 2015), *aff'd*, 835 F.3d 192 (1st Cir. 2016) (finding that the cumulative effect of incidents ranging from the improper handling of the plaintiff's FMLA leave request to his termination "could have constituted a *pattern of harassment* that could form the basis for a § 1983 retaliation action") (emphasis added); *Wentworth Precious Metals, LLC v. City of Everett*, No. CIV.A. 11-10909-DPW, 2013 WL 441094, at *6 (D. Mass. Feb. 4, 2013) (finding the defendant's repeated denial of the plaintiff's requests for operating licenses to be a "*pattern* of official opposition and fines" that created a "*scheme of harassment*" that had "the potential to chill speech by persons of ordinary hardiness" in the context of political retaliation under § 1983) (emphasis added);

*Manzer v. Town of Anson*, 771 F. Supp. 2d 121, 131–32 (D. Me. 2011) (concluding based on a course of conduct consisting of multiple incidents over a period of several months, that "[p]laintiffs allege a *campaign of harassment* by [defendant].") (emphasis added). Applying this logic to Spiegel's alleged conduct, it is clear that his actions are not of the same nature as those that have been deemed to constitute a pattern or campaign of harassment.

The actions in issue are limited to two incidents: Spiegel's 2013 distribution of a letter to the editor to members of the Town Meeting and his 2014 confrontation with the Alston supporter and comments made at that time.

1. 2013 Distribution of the Letter.

There are few differences between the first and second amended complaint regarding Spiegel's 2013 actions. The second amended complaint, unlike the first, provides the exact date of the incident; it includes comments about the Selectmen's practices; it adds Spiegel's request that Town Meeting members withhold judgment; and it substitutes language about Spiegel's purpose for distributing the letter.[14] (*Compare* #21 ¶¶ 207-208, *with* #78 ¶¶ 117-119.) In his opposition, Alston takes the position that Spiegel's distribution of the letter to the editor in 2013 was part of a "joint campaign" against Alston in which Spiegel and the Town were engaged, "the contours of which have yet to be fully discovered." (#84 at 5.) Alston goes on to argue that Spiegel coordinated his efforts with Selectwoman Daly. *Id.* There is nothing in the second amended complaint to support these arguments. (*Compare* #84 at 5, *with* #78.)

Beyond his bald assertion that Spiegel's actions were part of a broader scheme to target Alston (a scheme to which Alston is unable to connect Spiegel, *see infra* section B), Alston does not allege that he suffered any harm as a result of Spiegel's 2013 actions. (*See* #78.) He does not

[14] The words "providing diversity of opinion" are substituted for "provided some additional insight." (*Compare* #21 ¶ 208, *with* #78 ¶ 118.)

assert that he was aware of Spiegel's email. He fails to identify the members of the Town Meeting to whom the email was sent. *Id.* It is unreasonable to conclude that Spiegel's redistribution of a letter that had already been made public and Spiegel's comment in connection with the letter that readers should withhold judgment would deter a reasonably hardy individual from exercising his constitutional rights. The 2013 incident is not a source of actionable harm on which any of Alston's civil rights claims can be based.

2. <u>2014 Incident</u>.

The second amended complaint does not allege any harm suffered as a result of Spiegel's conduct in 2014, when he confronted the Alston supporter, made statements about Alston's personnel file, and commented regarding two Black firefighters' opinion of Alston. (*See* #78.) Thus, it fails to allege facts sufficient to give Alston standing to bring civil rights claims premised on Spiegel's 2014 actions. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) ("the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"). The statements made and actions taken by Spiegel were directed at the Alston supporter and two other individuals. (*See* #78 ¶¶ 121-123.) The second amended complaint does not assert that these unnamed individuals with whom Spiegel interacted in 2014 communicated his comments to Alston; that Alston was made aware of the incident in some other fashion; or that he suffered any effect from them.[15] (*See* #78.) In the final paragraph of the factual

---

[15] Understanding this, any argument premised on Spiegel's physical conduct, *i.e.*, that Spiegel "put his face close to the supporter's face and raised his voice," must be rejected. One cannot conclude that a reasonably hardy individual in Alston's position would be deterred from exercising his rights based on physical conduct that occurred out of his presence and of which he was not aware. The second amended complaint does not even allege that any of the unnamed individuals present during the 2014 incident were intimidated as a result of Spiegel's conduct. (*See* #78.) The first assertion that Spiegel's 2014 conduct constituted intimidation appears in Alston's opposition. (*See* #84 at 3.)

allegations section of the complaint, Alston asserts that he “complained to the Board of Selectmen under the Town’s anti-discrimination and retaliation policy, but the Board protected Mr. Spiegel by refusing to grant Mr. Alston a hearing, although the Town concluded that Mr. Spiegel was covered under the policy.” *Id.* ¶ 125. The second amended complaint does not allege the basis of Alston’s complaint to the Board. In other words, the second amended complaint lacks sufficient connection between the incidents at issue and Alston’s awareness of them.

Alston’s opposition to the instant motion supports the conclusion that any harm suffered was borne by the individuals to whom the comments were made. Specifically, the opposition states that “Mr. Spiegel’s aggressive physical conduct was objectively intimidating and conveyed that *support for Mr. Alston* would be treated with hostility by Town insiders.” (*See* #84 at 3) (emphasis added). In an effort to connect this alleged harm to Alston, the opposition suggests that Alston had knowledge of Spiegel’s physical intimidation of the individuals. *Id.* at 5 (“*Knowing* that potential supporters may be physically intimidated might well dissuade a reasonable employee from coming forward with a complaint of racial discrimination.”) (emphasis added). This allegation is absent from the second amended complaint.[16] With respect to Spiegel’s statement that the two Black firefighters did not support Alston, the opposition asserts that “this conveyed *to a reasonable listener* that Mr. Alston’s claims lacked merit and that Mr. Alston was not worthy of support.” *Id.* at 3 (emphasis added). This comment, made to the

---

[16] Alston’s opposition to Spiegel’s first motion to dismiss makes a similar assertion regarding his knowledge of the events in issue. Alston argues that “Mr. Spiegel *knew* his smears would eventually be communicated to Mr. Alston by his supporters and that they would cause Mr. Alston harm.” (#56 at 18) (emphasis added). Based on the facts alleged in the complaint, the court cannot conflate harm suffered by the unnamed individuals to Alston.

same unidentified audience as Spiegel's other 2014 comments, suffers from the same lack of any link to Alston. (*See* #78 ¶ 122.)

In short, with no allegation that any of Spiegel's 2014 conduct or statements were communicated to Alston, Spiegel's actions would have, at best, deterred plaintiff's supporter and the two other individuals from exercising their First Amendment rights, not Alston. Thus, the second amended complaint fails to demonstrate that, as a result of Spiegel's 2014 actions, Alston suffered harm sufficient to give rise to Article III standing to pursue his claims against Spiegel.

In an attempt to make the argument that Spiegel's comments about Alston's personnel file constituted an adverse employment action, Alston turns to *Ray v. Ropes & Gray LLP*, 961 F. Supp. 2d 344 (D. Mass. 2013) for support.[17] Alston argues that Spiegel's statements regarding plaintiff's personnel file permit only one reasonable inference: "that the contents of Mr. Alston's personnel file refuted Mr. Alston's complaint about racial discrimination and showed him to be a person unworthy of support by any reasonable person, even a person otherwise inclined to support Mr. Alston." (#84 at 4.) Alston contends that "[t]his effectively put [him] in the position of having to release the information in his file in order to disprove the implication," (#84 at 4), an action plaintiff contends the *Ray* court deemed sufficient grounds on which to base a First Amendment retaliation claim. *See id.* (citing *Ray*, 961 F. Supp. 2d at 360). Assuming, *arguendo*,

[17] Alston also cites *Annett v. Univ. of Kansas*, 371 F.3d 1233, 1239 (10th Cir. 2004) for the proposition "that acts that carry 'a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects' may be considered retaliatory." (#84 at 4-5 (quoting *Annett*, 371 F.3d at 1239).) In *Annett*, the Tenth Circuit, relying on the law of that circuit, concluded that the plaintiff's alleged harm – the failure to obtain certain positions as an employee of the defendant – was not "tantamount to a false accusation of criminal charges or a negative letter of reference[,]" and therefore did not constitute an adverse employment action under Title VII. *See Annett*, 371 F.3d at 1239 (quoting *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996)). The *Annett* decision, as it relies on 10th circuit precedent and is based on a factually dissimilar situation, is inapplicable here.

that Alston was made aware of Spiegel's conduct and was impacted such that he has standing to bring his claims, *Ray* is still readily distinguishable from this case.

The plaintiff in *Ray*, an associate attorney of African-American heritage employed by the defendant law firm, alleged that he was discriminated and retaliated against on the basis of his race in violation of 42 U.S.C. § 1981 and Title VII.[18] *Ray*, 961 F. Supp. 2d at 344. Ray filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging that he was the victim of discrimination and retaliation. *Id.* at 351. The EEOC issued a determination in which it found there was probable cause to believe that the defendant had retaliated against Ray for his filing of the EEOC charge. *Id.* at 352. Ray mailed the EEOC's finding to a number of people including Dean Martha Minow of Harvard Law School. *Id.* A legal media website, *Above the Law*, got wind of Ray's contact with Dean Minow and reached out to the defendant for comment. *Id.* In response, the defendant provided the website with Ray's EEOC determination letter, which the website posted online. *Id.* The letter "included a recitation of evidence, including detailed information about Ray's performance reviews and a description of the internal investigation of Ray and his reprimand by the firm for alleged criminal misconduct with a subordinate." *Id.*

The portion of the *Ray* decision to which Alston cites pertains to Ray's assertion that Ropes & Gray retaliated against him when it provided the letter to *Above the Law*. (*See* #84 at 4 (citing *Ray*, 961 F. Supp. 2d at 360).) The *Ray* court concluded that "[t]he threat of

[18] Given its substantial similarities to § 1983, Title VII case law has been used by courts of this circuit in § 1983 analyses. In like manner to a claim brought under § 1983, Title VII requires a plaintiff to show that he suffered an adverse employment action. *See Ray*, 961 F. Supp. 2d at 357 (citing *Hernandez–Torres v. Intercont'l Trading, Inc.*, 158 F.3d 43, 47 (1st Cir. 1998)).

dissemination of derogatory private information, even if true, would likely deter any reasonable employee from pursuing a complaint against his employer." *Ray*, 961 F. Supp. 2d at 360.

In contrast to *Ray*, Alston does not allege that Spiegel threatened to publish Alston's personnel file. (*See* #78.) Nor did the vague information that Spiegel said he knew about from the file compare to the information that was actually released in *Ray*, which was described as "severely damaging information," "including an allegation of criminal misconduct." 961 F.Supp. 2d at 360. Rather, Alston, in his opposition, draws the inference that he was put in a position such that he was forced to release his information. (#84 at 4.) This assertion is undercut entirely by the fact that Alston does not allege that he released his personnel file in an effort to rectify Spiegel's alleged misrepresentation of the facts. (*See* #78.) Plaintiff cannot argue that Spiegel's comment left him with only one course of action, when there is nothing to suggest that he in fact followed that course.

3. <u>Totality of Spiegel's actions</u>.

Alston has not alleged any actionable harm resulting from Spiegel's conduct. While it is true in the context of First Amendment retaliation that "even relatively minor events might give rise to liability," *Rivera-Jimenez v. Pierluisi*, 362 F.3d 87, 94 (1st Cir. 2004), Alston's claims do not rise even to this level. The second amended complaint fails to allege that Alston had any knowledge of Spiegel's actions. This alone is a fatal flaw. Moreover, the failure to identify any of the individuals at whom Spiegel's actions and comments were directed – the Town Meeting members, the Alston supporter, and the two witnesses – supports such a finding. Also relevant is Spiegel's lack of direct connection to Alston.[19] The two incidents did not result in any

[19] While it is not required that the illicit actor be the plaintiff's employer, *see Barton*, 632 F.3d at 29 n. 19, an overwhelming majority of the cases in which the adverse employment action analysis is undertaken do so in the employer/employee setting. The fact that Spiegel has no authority to affect Alston's status as an employee of the Town gives weight to the finding that a reasonable person in Alston's position would not

actionable harm to Alston; when taken together, they do not constitute a campaign or pattern of harassment. For these reasons, Alston's § 1983 claims and all others asserted against defendant Spiegel should be dismissed.

B. 42 U.S.C. § 1985.

Section 1985 provides a remedy for acts of civil conspiracy in which two or more individuals conspire to deprive another of their rights and privileges under the law. *See* 42 U.S.C. § 1985(3).

> To plead this claim adequately, Plaintiff[] must demonstrate four elements. *See Perez–Sanchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1st Cir. 2008). First, Plaintiff[] 'must allege a conspiracy.' *Id.* (citing *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996)). Second, Plaintiff[] must allege that the purpose of the conspiracy is to 'deprive the plaintiff of the equal protection of the laws.' *Perez–Sanchez*, 531 F.3d at 107. Third, Plaintiff[] must 'identify an overt act in furtherance of the conspiracy.' *Id*. Finally, Plaintiff[] must show 'either injury to person or property, or a deprivation of a constitutionally protected right.' *Id.*

*Cabi*, 161 F. Supp. 3d at 159.

Alston fails to make out a *prima facie* case of a conspiracy as required under § 1985(3).

> Generally, a conspiracy requires a meeting of the minds to achieve an unlawful end. Pleading a conspiracy under § 1985(3) 'requires at least minimum factual support of the existence of a conspiracy.' *Francis-Sobel v. University of Maine,* 597 F.2d 15, 17 (1st Cir. 1979). Similarly, a dismissal is warranted should the complaint fail to elaborate nor substantiate bald claims that a defendant conspired with one another. *Slotnick v. Garfinkle,* 632 F.2d 163, 166 (1st Cir. 1980). Therefore, a plaintiff's complaint containing vague, conclusory allegations of conspiracy, without any specification of the agreement forming the conspiracy, fails to state a claim under § 1985. That is, the plaintiffs must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred. The failure to allege a conspiracy defeats a cause of action under § 1985(3). *Ochoa Realty Corp. v. Faria,* 634 F.Supp. 723, 726 (D. P.R. 1986) (affirmed at 815 F.2d 812 (1st Cir. 1987)). Thereafter mere allegations of misconduct by one person alone is insufficient to support a § 1985 claim, hence a complaint under § 1985(3) which fails to allege a conspiracy will not survive a motion to dismiss.

---

have been deterred from exercising his First Amendment rights as a result of the comments made by Spiegel. Alston does not contest that Spiegel is not his employer.

*Rolon v. Rafael Rosario & Assocs., Inc.*, 450 F. Supp. 2d 153, 159–60 (D.P.R. 2006). Here, the second amended complaint fails to allege sufficiently a conspiracy in which Spiegel was a participant. (*See* #78.) This failure was apparent in the first amended complaint and noted by Spiegel in his first motion to dismiss. (*See* #48 at 19-21.) The second amended complaint is equally deficient with respect to allegations concerning of any type of communication, cooperation, or agreement amongst Spiegel and any other co-defendant to conspire against Alston or to deprive him of his civil rights.[20] *Id.* Alston's labeling Spiegel an "unofficial surrogate" of the Board, as noted above, is unsubstantiated and vague. Alston's bald allegations that there exists an "unconstitutional policy" encouraging discrimination against minorities in the Town and that Spiegel violated Alston's rights by enforcing this policy are conclusory assertions. Beyond these flawed allegations, the second amended complaint is silent as to Spiegel's participation in a conspiracy.[21]

Alston also fails to demonstrate how any of Spiegel's acts were done in furtherance of the conspiracy. Thus, the second amended complaint falls short with respect to both the first and third prongs of the § 1985(3) pleading requirements. *See Cabi*, 161 F. Supp. 3d at 159. For these reasons, in addition to those set out above, Alston's § 1985 claims against Spiegel should be dismissed.

---

[20] The assertion that "Spiegel has frequent contact with the Board . . . , both formally and informally," (#78 ¶ 13), is insufficient to illustrate an agreement between the parties. Given the lack of support or further elaboration regarding this alleged communication and understanding Spiegel's role in the Town governance, the allegation that Spiegel interacted with the Board does not lead to the inference that there was any unlawful goal.

[21] Alston's claims that the Town provided Spiegel with access to plaintiff's personnel file and that the Board protected Spiegel by failing to investigate Alston's claims against Spiegel in an effort to retaliate against plaintiff, (*see* #78 ¶¶ 120, 125), are inadequate grounds on which to base the existence of a conspiracy. The second amended complaint does not allege that Spiegel was involved with or connected to these actions. (*See* #78.)

C. 42 U.S.C. § 1981.

Title 42 U.S.C. § 1981 prohibits racially discriminatory impairment of one's right "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." Title 42 U.S.C. § 1981(a). Section 1981 "'prohibits not only racial discrimination but also retaliation against those who oppose it.'" *Cabi*, 161 F. Supp. 3d at 157 (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2529 (2013)).

> Any claim brought under § 1981 . . . must initially identify an impaired 'contractual relationship,' § 1981(b), under which the plaintiff has rights. . . . Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship.

*Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006); *see also Hammond v. Kmart Corp*, 733 F.3d 360 (1st Cir. 2013).

Alston does not allege the impairment of any existing contractual right or the blockage of the creation of a contractual relationship as a result of Spiegel's actions. This failure was raised by Spiegel in his original motion to dismiss, (*see* # 48 at 22), however, plaintiff has not remedied the situation in his second amended complaint. (*See* #78, no allegation that Spiegel is Alston's employer, *i.e.*, a contractual relationship, or that Spiegel's actions had any effect on Alston's contractual rights.) This absence results in plaintiff's failure to make out a *prima facie* case under § 1981. This failure, combined with the lack of any actionable harm on which to base such a claim, warrants dismissal of Alston's § 1981 claims.

VI. Conclusion.

For all of the reasons stated, I RECOMMEND that Defendant Stanley Spiegel's Motion to Dismiss (#80) be ALLOWED.

VII. Review by District Court Judge.

The parties are hereby advised that any party who objects to this recommendation must file specific written objections with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The objections must specifically identify the portion of the recommendation to which objections are made and state the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health & Human Servs*., 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s / M. Page Kelley
M. Page Kelley
United States Magistrate Judge

February 1, 2017