UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-13987-GAO

GERALD ALSTON,
Plaintiff,

v.

TOWN OF BROOKLINE, MASSACHUSETTS; BROOKLINE BOARD OF SELECTMEN; BETSY DEWITT, in her individual and official capacities; KENNETH GOLDSTEIN, in his individual and official capacities; NANCY DALY, in her individual and official capacities; JESSE MERMELL, in her individual and official capacities; NEIL WISHINSKY, in his individual and official capacities; BERNARD GREENE, in his individual and official capacities; BEN FRANCO, in his individual and official capacities; NANCY HELLER, in her individual and official capacities; SANDRA DEBOW, in her individual and official capacities; JOSLIN MURPHY, in her individual and official capacities; STANLEY SPIEGEL, in his individual capacity; and LOCAL 950, INTERNATIONAL ASSOCIATION OF FIREFIGHTERS,
Defendants.

ORDER ON REPORT AND RECOMMENDATION
August 7, 2017

O'TOOLE, D.J.

The magistrate judge to whom this matter was referred filed a report and recommendation (dkt. no. 132) ("R&R") with respect to Defendant Stanley Spiegel's Renewed Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11 (dkt. no. 91). The magistrate judge recommends allowing the motion and ordering the plaintiff's attorney to pay defendant Spiegel's fees and expenses incurred after this Court issued its Order dismissing without prejudice the First Amended Complaint on September 30, 2016. The plaintiff and defendant Spiegel have filed objections to the R&R (dkt. nos. 138, 139).

Having reviewed the magistrate judge's recommendation as well as the relevant submissions from the parties, I approve and ADOPT the R&R to the extent that it recommends granting the defendant's motion and imposing sanctions. I conclude, however, that defendant

Spiegel should be compensated for fees and expenses incurred after March 8, 2016, the date upon which counsel for Spiegel served plaintiff's counsel with Rule 11 "safe harbor" notice.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GERALD ALSTON,
    Plaintiff,

v.                                         CIVIL ACTION NO. 15-13987-GAO

STANLEY SPIEGEL,
    Defendant.

REPORT AND RECOMMENDATION
ON DEFENDANT STANLEY SPIEGEL'S RENEWED
MOTION FOR SANCTIONS (#91).

KELLEY, U.S.M.J.

I. Introduction.

On December 1, 2015, plaintiff Gerald Alston brought a complaint against the Town of Brookline (the Town), the Brookline Board of Selectmen (the Board), eight people who were present or past members of the Brookline Board of Selectmen in their individual and official capacities, the Human Resources Director for Brookline, Town Counsel, the union of firefighters to which plaintiff belonged, Local 950 (the Union); and Stanley Spiegel, a Town Meeting member and member of the Town's Advisory Committee, alleging violations of 42 U.S.C. §§ 1981, 1983, and 1985, stemming from an alleged ongoing policy and practice of racial discrimination in Town governance. (#1.)

On January 26, 2016, an amended complaint was filed naming seven additional plaintiffs.[1] (#21.) The 85-page, 270-paragraph amended complaint stated that the plaintiffs

---

[1] Two of those plaintiffs, Officers Prentice Pilot and Estifanos Zerai-Misgun of the Brookline Police Department, filed Notices of Voluntary Dismissal on February 8, 2016. (##30, 31.)

"bring this claim on behalf of themselves and all others who have been damaged by Brookline's longstanding and well-established policy, custom and practice of opposing racial equality, enforcing racial subordination, engaging in affirmative action and favoritism towards [W]hite residents and employees, and retaliating against persons who protest racial discrimination." *Id*. ¶ 1. The plaintiffs included Gerald Alston, who is Black and was a firefighter for the Town, whose allegations are set out in detail below. Of the other five plaintiffs, the amended complaint stated that one, a worker in the Sanitation Department, was Black, *id*. ¶ 87, and three, residents of the Town, identified themselves as being of Puerto Rican, Guatemalan, and Dominican descent. *Id*. ¶¶ 47-48. With regard to the remaining plaintiff, a Town resident who alleged discriminatory treatment concerning, among other things, an application to be a firefighter, the amended complaint did not state his racial background, a fatal flaw in a case alleging discrimination on the basis of race. *Id*. ¶¶ 79-86, 252, 261.

All defendants moved to dismiss the amended complaint (##34, 36, 52), including Spiegel. (#45.) Spiegel filed a motion for sanctions pursuant to Fed. R. Civ. P. 11 against Attorney Brooks Ames.[2] (#54.) Plaintiffs filed a combined opposition to Spiegel's motion to dismiss and motion for sanctions (#56) and Spiegel replied. (#65.)

In ruling on the defendants' motions to dismiss, this court entered a Report and Recommendation to the District Court, O'Toole, J., recommending that all plaintiffs other than

---

[2] Plaintiffs were all represented by Attorney Ames. The pleadings in this case frequently refer to the long history of acrimony between Attorney Ames and the leadership of the Town. *See, e.g*., #11, motion to dismiss by the Town at 2, (stating that the complaint is a continuation of a "policy campaign" begun by Attorney Ames years ago "regarding the proper role of the Town's . . . human relations commission while he was a Town official on that body . . . ."); #56, plaintiff's response to defendant Spiegel's motion to dismiss at 5, ("Mr. Spiegel's motion for sanctions is not based on any absence of law or facts supporting the complaint against him. It is brought in bad faith against me, as counsel for the plaintiffs, for the sin of violating the Town of Brookline's policy against making and supporting charges of racism.").

Alston be severed from this action and dismissed without prejudice under Fed. R. Civ. P. 20(a)(1) because many of the plaintiffs' allegations did not arise out of the same "transaction or occurrence." (#72 at 23.) The court rejected plaintiffs' efforts to join their varied complaints about their treatment by numerous actors in the Town into one action alleging an over-arching conspiracy of racism spanning centuries because plaintiffs' allegations, involving different people and circumstances, complaining of discriminatory acts in hiring, employment conditions, First Amendment retaliation, accommodations for injury, and policing practices, were too disparate to be tried together. *See id*.

With regard to the remaining plaintiff, Alston, because the complaint was so poorly drafted and contained so many lengthy, irrelevant assertions, this court found that it "simply [wa]s not clear whether the amended complaint present[ed] an actionable case or controversy that the court c[ould] resolve, or state[d] colorable claims against the named defendants." (#72 at 28.) Thus, this court recommended that the District Court dismiss the amended complaint without prejudice with leave for Alston to replead his claims in a manner consistent with the requirement of Fed. R. Civ. P. 8(a)(2) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief").[3]

Finally, this court recommended that the claims against Spiegel be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. (#72 at 33-39.) The basis for that recommendation is described in more detail below.

---

[3] This court set out in detail how the amended complaint fell far short of the requirements of Rule 8(a) in many respects. (#72 at 28-32.) For example, the allegations of racial discrimination went back "for centuries," and the amended complaint listed 21 supposed unconstitutional policies of the Town. (#21 ¶¶ 127-132.) The court found that the amended complaint was vague, repetitive, lacked key names and dates, contained sections that were irrelevant to any claim, failed to explain what Town bodies were responsible for what actions, and contained only conclusory allegations against certain defendants, among other problems. (#72 at 28-30.)

Judge O'Toole adopted the Report and Recommendation, with the exception of the recommendation that the claims against Spiegel be dismissed with prejudice: "Since the plaintiff is being granted leave to replead against the other defendants, I think it is fair to give him a chance to replead his claims against Spiegel as well." (#75 at 2.)

Alston filed a second amended complaint on October 21, 2016. (#78.) Spiegel again moved to dismiss (#80); this court recommended to Judge O'Toole that the second amended complaint be dismissed with prejudice as to Spiegel. (#98.) Meanwhile, Spiegel renewed his motion for sanctions. (#91.) Judge O'Toole adopted the second Report and Recommendation and dismissed the claims against Spiegel with prejudice: "The plaintiff was provided an opportunity to cure the deficiencies of the first amended complaint with respect to the claims against the defendant, Stanley Spiegel, but has failed to do so." (#105 at 1-2.)

A hearing on Spiegel's renewed motion for sanctions was held on Thursday, June 8, 2017. After argument this court found that sanctions against Attorney Ames under R. 11 are appropriate for the reasons set out below. The court ordered counsel for Spiegel to file notice of proposed reasonable attorneys' fees and expenses by June 22, 2017 and Attorney Ames to file any objection to the fees by June 29, 2017.[4]

II. <u>Facts Concerning Alston's Claims Against Spiegel in the First Amended Complaint</u>.

Familiarity with the facts of this case is presumed. (#98 at 3-6.) Abbreviated facts pertaining to Alston's claims will be repeated here.

Alston was the only plaintiff who made allegations against Spiegel. The amended complaint identifies Spiegel as "an elected town meeting member and an appointed member of the advisory committee" who has "frequent contact with the Board of Selectmen both formally

---

[4] The court will issue a separate order concerning the amount of the sanctions.

and informally.[5] (#21 ¶ 117.) The first amended complaint alleges that Alston, who is Black, joined the Brookline Fire Department in 2002. *Id.* ¶ 102. In May 2010, Alston's supervisor left a voicemail on his phone; at the end of the voicemail the supervisor used profanity and called Alston a racial slur. *Id.* ¶¶ 175-178. Alston reported the message to the Fire Department's chief operating officer, who took no action. *Id.* ¶¶ 179-180. In the ensuing months, although Alston filed a written complaint and met with town leaders, no action was taken to discipline the supervisor, and Alston was pressured to drop his complaint. *Id.* ¶¶ 182, 184-185.

The Union, the Board and the Town retaliated against Alston. *Id.* ¶ 189-193. The Board and the Town "created a retaliatory and hostile work environment" by training supervisors to "secretly report workplace friction" with Alston; having human resources prepare reports "portraying [Alston] as a problem employee"; and painting Alston as a "disruptive and overly-sensitive" person who "imagin[ed] or fabricat[ed] complaints of harassment and retaliation." *Id.* ¶¶ 196-197. Alston "protested the Union's retaliation against him but the Town did nothing to address it." *Id*. ¶ 195.

Alston filed a formal complaint with the Massachusetts Commission Against Discrimination and filed a lawsuit in the Massachusetts Superior Court. *Id.* ¶ 199. In response, the Town perpetrated "more harassment and retaliation" against Alston. *Id.*

---

[5] Spiegel was one of 240 elected Town Meeting members; the Town Meeting is the Town's legislative body. He also served as one of thirty members of the Town's Advisory Committee, which makes recommendations to the town meeting on warrant articles and budget issues, but has no final authority on them. (#72 at 33 n. 17.) The members of the advisory committee are independent of the Board of Selectmen. *Id*. As stated in Spiegel's memorandum in support of his motion for sanctions, he was at the time of the filing of the memorandum an 80-year-old retired Math professor from the University of Massachusetts in Lowell, who had been an elected Town Meeting member, an unpaid position, for thirty years. He was the only defendant who was in an unpaid position and who was paying his own attorney's fees. (#55 at 3.)

In 2013, at a committee meeting, defendant Nancy Daly, a Town Selectwoman, distributed a letter that had been sent to the local Brookline newspaper at a meeting of the Town's diversity committee. *Id.* ¶¶ 116, 207. The letter "attacked [Alston's] courage and credibility," and "was solicited from a retired Black firefighter for the purpose of retaliating against" Alston. *Id.* The next day, Spiegel distributed the letter to town meeting members to provide "'diversity' of opinion regarding the lawsuit." *Id.* ¶ 208.

In December 2014, Alston again asked the Board to conduct an investigation of his case and place him back on administrative leave. *Id.* ¶ 229. Instead, the Town retaliated against Alston by providing Spiegel with Alston's personnel file. *Id.* ¶ 230. Spiegel then intimated to a supporter of Alston that there was damaging information in Alston's file. *Id.* Spiegel "also falsely claimed in front of several witnesses that two Black firefighters had volunteered to him that they did not support" Alston. *Id.* After the supporter complained, Town counsel spoke to Spiegel and a witness, and wrote a "sham report" the next day concluding that Spiegel had not engaged in misconduct. *Id.* ¶ 231.

Spiegel is alleged to have violated 42 U.S.C. §§ 1981, 1983, and 1985 "by enforcing the Town's unconstitutional policy, practice, and custom." (#21 ¶ 258.) He is alleged to have "sought through the execution of the policy to deter the Plaintiffs and others in Brookline from enjoying their First Amendment rights to freedom of speech and to petition the government for redress of grievances" and "retaliating against Plaintiffs for opposing the Town's unconstitutional and racist policy." *Id.* ¶¶ 260-261. Finally, he is alleged to have discriminated against "Plaintiffs on the basis of race," acting "under the color of law," and "violating clearly established law." *Id*. ¶¶ 262-263.

III. The First Report and Recommendation.

When recommending dismissal of the allegations against Spiegel in the first amended complaint, this court found that Alston had "failed to state a claim against Spiegel under *any* actionable legal theory." (#72 at 35) (emphasis in original). "Regardless of the specific theory of liability, Alston has not met the core requirement of any discrimination claim, which is that he suffered some deprivation of a right, privilege, or immunity because of his race." *Id.*

The court explained in detail the requirements for each of Alston's claims against Spiegel:

> 'A retaliation claim pursuant to section 1981 requires that a plaintiff show that (1) he engaged in statutorily protected activity (2) *he suffered an adverse employment action* and (3) the protected conduct and adverse employment action were causally connected.' *Cabi v. Boston Children's Hosp.*, --- F. Supp. 3d ----, 2016 WL 593495 at *13 (D. Mass. Feb. 12, 2016) (citing *Pina v. Children's Place*, 740 F.3d 785, 801 (1st Cir. 2014); emphasis added).
>
> 'To establish municipal liability for a constitutional violation by a municipal officer [under § 1983], a plaintiff must show that 1) *the harm to him* was caused by the constitutional violation, 2) a municipal policy or custom led to that violation and caused the *plaintiff's injury* and 3) the municipality was 'deliberately indifferent' to the affected constitutional right.' *Pisano v. Ambrosino*, No. CV 13-11409-NMG, 2016 WL 3093372, at *3 (D. Mass. June 1, 2016) (citing *Young v. City of Providence*, 404 F.3d 4, 25-26 (1st Cir. 2005); emphasis added). The elements of a First Amendment retaliation claim under § 1983 are (1) speech "protected under the First Amendment so as to shield [plaintiff] from adverse employment action in retaliation for such speech," (2) *an adverse employment action*, and (3) a causal connection between the protected speech and the adverse action. *Gagliardi v. Sullivan*, 513 F.3d 301, 306 (1st Cir. 2008) (quoting *Curran v. Cousins*, 509 F.3d 36, 45 (1st Cir. 2007); emphasis added); *see also Najas Realty, LLC v. Seekonk Water Dist.*, 821 F.3d 134, 141 (1st Cir. 2016).'
>
> Finally, '[s]ection 1985(3) provides a remedy for a conspiracy to violate civil rights if the plaintiff establishes 1) a conspiracy, 2) a conspiratorial purpose to deprive him of the equal protection of the laws, 3) an overt act in furtherance of the conspiracy and 4) *an injury to his person or property, or a deprivation of a constitutionally protected right*. … The second requirement of conspiratorial purpose requires 'some racial, or perhaps otherwise class-based, invidiously

7

> discriminatory animus.'" *Pisano*, 2016 WL 3093372 at *3-4 (citing *Perez-Sanchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1st Cir. 2008); emphasis added).

(#72 at 35-36.)

The court found that Alston had not pointed to any actionable harm or civil rights violation that he suffered from Spiegel's participation in Town government, his distribution of a letter that had already been made public, or comments insinuating that Alston's personnel file contained negative information. Nor did Alston make a plausible claim that any of his alleged employment discrimination or retaliation was in any way connected with Spiegel's actions. *Id.* at 36.

The court concluded that Spiegel's circulation of an already-published letter and vaguely negative comments to a supporter were not sufficiently adverse to chill the speech of a reasonable person. *See, e.g.*, *Barton v. Clancy,* 632 F.3d 9, 29–30 (1st Cir. 2011) (citing *McKee v. Hart,* 436 F.3d 165, 170–71 (3rd Cir. 2006), for the proposition that "three comments by supervisor that were critical of plaintiff's job performance, without more, were too trivial to deter a person of ordinary firmness from exercising First Amendment rights"); *Coszalter v. City of Salem*, 320 F.3d 968, 976 (9th Cir. 2003) ("when an employer's response includes only minor acts, such as 'bad-mouthing,' that cannot reasonably be expected to deter protected speech, such acts do not violate an employee's First Amendment rights"); *Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998) ("It would be the height of irony, indeed, if mere speech, in response to speech, could constitute a First Amendment violation."). Because Spiegel's actions were not severe enough to constitute First Amendment retaliation, they could not serve as retaliation under the other frameworks either. (#72 at 37-39.)

IV. <u>The Second Amended Complaint</u>.

After Judge O'Toole ordered that the first amended complaint be dismissed with leave to replead (#75), Alston filed a second amended complaint, again including Spiegel as a defendant (#78). The changes with regard to allegations against Spiegel in the second amended complaint were minimal.

One change to the second amended complaint is that Spiegel is called an "unofficial surrogate" of the Board. *See id.* ¶¶ 13, 31, 116. The second amended complaint does not contain a definition of this label. Spiegel, in his memorandum in support of his motion to dismiss, notes the lack of support for the surrogate term, particularly with regard to any factual allegations, yet Alston did not address the matter in his opposition. *Compare* #81 at 2-3*, with* #84. Alston cannot hook Spiegel into an alleged conspiracy to violate Alston's civil rights under § 1985(3) simply by calling him an "unofficial surrogate" of a governmental body. *See* #72 at 36 (setting out requirements for alleging conspiracy).

With regard to Spiegel's distribution of the letter in 2013, the second amended complaint, unlike the first, provided the exact date of the incident; it included comments about the Selectmen's practices; it added Spiegel's request that Town Meeting members withhold judgment, and it substituted language about Spiegel's purpose for distributing the letter.[6] *Compare* #21 ¶¶ 207-208, *with* #78 ¶¶ 117-119. However, like the first amended complaint, in the second, beyond his general assertion that Spiegel's actions were part of a broader scheme to target him, Alston does not allege facts supporting the allegation that he suffered any harm from the distribution of the 2013 letter. He does not even assert that he was aware of Spiegel's email

---

[6] The words "providing diversity of opinion" are substituted for "provided some additional insight." *Compare* #21 ¶ 208, *with* #78 ¶ 118.

distributing the letter. Nothing new in the second amended complaint addresses the problem that this court discussed at length in its first Report and Recommendation, namely, that Spiegel's redistribution of a letter that was already published and his comment that readers should withhold judgment would not deter a reasonable hardy person from exercising his constitutional rights. (#72 at 36-37.) In short, the 2013 incident was not a source of actionable harm as pled in the first amended complaint, and the changes made to the second amended complaint did not remedy that deficiency. (#98 at 11-12.)

As for the 2014 incident, when Spiegel confronted the Alston supporter, made insinuations about Alston's personnel file, and commented regarding two Black firefighters' opinion of Alston, the second amended complaint, like the first, does not allege any harm suffered from this incident. Nor does the second amended complaint sufficiently allege the basis of Alston's knowledge of the incident or any ill effects he suffered from it. *Id*. at 12-14.

For the reasons set out in this court's Report and Recommendation concerning the second amended complaint, the minor changes made from the first to the second amended complaint did not make any difference in the viability of the claims against Spiegel. The second amended complaint, like the first, failed to allege any actionable harm resulting from Spiegel's conduct. *Id*. at 7-19.

V. The Law Pertaining to Rule 11.

"Rule 11 permits a court to impose sanctions on a party or lawyer for advocating a frivolous position, pursuing an unfounded claim, or filing a lawsuit for some improper purpose." *CQ Int'l Co. v. Rochem Int'l, USA*, 659 F.3d 53, 60 (1st Cir. 2011).[7] A claim is frivolous under

---

[7] Federal Rule of Civil Procedure 11 provides that by signing and filing a pleading, an attorney certifies that to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

Rule 11 when it is "either not well-grounded in fact or unwarranted by existing law." *Cruz v. Savage*, 896 F.2d 626, 632 (1st Cir. 1990). A court must use an objective standard of "reasonableness under the circumstances" in determining whether there has been compliance with Rule 11. *Id*. at 631 (citations omitted). Bad faith is not required; frivolous arguments may be sanctioned regardless of the intent of the attorney making them. *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 33, 40 (1st Cir. 2005).

"Whether a litigant breaches his or her duty [under Rule 11] to conduct a reasonable inquiry into the facts and the law depends on the objective reasonableness of the litigant's conduct under the totality of the circumstances." *Navarro-Ayala v. Nunez*, 968 F.2d 1421, 1425 (1st Cir. 1992) (internal quotation marks omitted). The court should consider "the complexity of the subject matter, the party's familiarity with it, the time available for the inquiry, and the ease (or difficulty) of access to the requisite information." *Id*.

The question here is whether any reasonable attorney would have thought that the changes made to the second amended complaint cured the problems that had been set out in this court's first Report and Recommendation. *Nyer v. Winterthur Int'l*, 290 F.3d 456, 461 (1st Cir. 2002). The answer is no. The inconsequential changes Alston made to the facts in the second amended complaint in no way altered the conclusion in the first Report and Recommendation:

---

**(1)** [the pleading] is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

**(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]

**(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; . . . .

Fed. R. Civ. P. 11(b).

that Alston failed to state a claim against Spiegel under any actionable legal theory. (#72 at 35.) A litigant's "obligations with respect to the contents [of his filings] are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." Fed. R. Civ. P. 11 Advisory Committee's note. This court's first Report and Recommendation served as a warning to Alston that his claims against Spiegel were meritless. After making nominal changes that did not in any way remedy the defects which the court had noted, refiling the complaint was a clear violation of Rule 11.

Given the disarray and confusion in the first amended complaint, and the fact that plaintiffs were permitted to replead against all other defendants, Judge O'Toole reasonably gave plaintiff the opportunity to replead against Spiegel, as well.[8] (#75 at 2.) That opportunity was not, however, a license simply to file a frivolous case for the second time. This court therefore recommends that under Rule 11 (c)(4), the District Court order Attorney Ames to pay attorneys' fees and other expenses incurred by Spiegel after the District Court dismissed the first amended complaint against him and allowed Alston to replead. *See McCarty v. Verizon New England*, 674 F.3d 119, 123 (1st Cir. 2012) (imposing sanctions consisting of attorneys' fees incurred after court warned litigant that case may be frivolous).

## VI. Conclusion.

For the reasons set out above this court RECOMMENDS that, pursuant to Fed. R. Civ. P. 11, Attorney Brooks Ames pay defendant Stanley Spiegel reasonable attorneys' fees and other

---

[8] The court notes that despite the numerous problems with the complaints as filed in this matter, Alston has discrimination claims that will survive a motion to dismiss; the Town and Board have acknowledged this. *See* #72 at 30-31.

12

expenses from the time the District Court allowed the Report and Recommendation on Spiegel's motion to dismiss on September 30, 2016. (#75.)

## VII. Review by District Court Judge.

The parties are hereby advised that any party who objects to this recommendation must file specific written objections with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The objections must specifically identify the portion of the recommendation to which objections are made and state the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health & Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s / M. Page Kelley
M. Page Kelley
June 9, 2017                                             United States Magistrate Judge