UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

GERALD ALSTON,

        Plaintiff

        CIVIL ACTION: 1:15-CV-13987-GAO

v.

TOWN OF BROOKLINE, MASSACHUSETTS, et al.

        Defendants
_____

## OBJECTION TO AMENDED FEE PETITION

Stanley Spiegel's supplemented fee petition now includes proposed monetary sanctions of nearly $100,000 against Plaintiff's counsel for filing claims against Mr. Spiegel on behalf of Gerald Alston that Judge O'Toole determined should <u>not</u> be dismissed with prejudice and could be refiled along with claims against the Town of Brookline that the Court has determined to be viable. The proposed sanctions are not justified and no legitimate deterrence goal will be satisfied by imposing them. Plaintiff's counsel incorporates by reference the arguments in his opposition to the original fee petition, (See Docket No. 147), and further states as follows.

    **A.**    **The Proposed Sanctions Will Chill Efforts to Extend the Civil Rights Laws to Protect Public Employees Who Speak Out Against Racism in the Workplace from Smear Campaigns that Reference Confidential Personnel Files.**

In articulating the Rule 11 standard in Section V of the report, the Court cited <u>Cruz v. Savage</u>, 896 F.2d 626, 632 (1st Cir. 1990) for the proposition that "a claim is frivolous under

1

Rule 11 when it is 'either not well-grounded in fact or unwarranted by existing law.'" (See Docket No. 132)  But this is not the full quote from <u>Cruz</u> and it is not the correct legal standard under Rule 11. The full quote in <u>Cruz</u> provides that a claim is frivolous under Rule 11 when it is "either not well-ground in fact or unwarranted by existing law <u>or a good faith argument for an extension, modification or reversal of existing law.</u>" See <u>Cruz</u>, 896 F.2d at 632 ("The court found the majority of the plaintiffs' claims to be frivolous, that is, either not well-grounded in fact or unwarranted by existing law <u>or a good faith argument for an extension, modification or reversal of existing law.</u>") The omitted language explains why "[t]he mere fact that a claim ultimately proves unavailing, without more, cannot support the imposition of Rule 11 sanctions." See <u>Protective Life Ins. Co. v. Dignity Viatical Settlement Partners, L.P.</u>, 171 F.3d 52, 58 (1st Cir. 1999). And it stands behind the First Circuit's admonition that Rule 11 sanctions "should not be imposed so as to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories.") <u>Cruz</u>, 896 F.2d at 631 (internal quotations and citations omitted).

A correct application of Rule 11 helps to ensure that the protections of the civil rights laws do not become an empty promise by giving lawyers permission to argue in good faith for their extension without being deterred by the prospect of severe monetary penalties. Over the course of multiple pleadings, Plaintiff's counsel has repeatedly made a good faith argument that Mr. Spiegel's conduct against Mr. Alston might well have dissuaded a reasonable worker from making or supporting a charge of racial discrimination. Plaintiff's counsel argued that the principles articulated in <u>Burlington N. & Santa Fe Ry. V. White</u>, 548 U.S. 53, 68 (2006) and <u>Ray v. Ropes & Gray LLP</u>, 961 F. Supp. 2d 344, 360 (D. Mass. 2013) protected Mr. Alston from a smear campaign that included vicious gossip (that Black firefighters who worked for Mr. Spiegel did not support Mr. Alston's claims of racial discrimination) and derogatory innuendo about the

2

contents of his personnel file (that Mr. Spiegel knew the contents and others who did not support Mr. Alston if they knew the "real story" contained therein). Plaintiff's counsel likewise argued that Mr. Spiegel's conduct took place in the context of a Town policy of retaliation against people who speak out about racial discrimination, including by making reference to confidential personnel information. The fact that the Court disagreed with the argument did not make it sanctionable under the correct Rule 11 legal standard, which the Court did not apply. See Fed.R.Civ.P. 11(b)(2) (requiring claims to be "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.")

The imposition of severe monetary sanctions in this case will deter other counsel from seeking to extend the civil rights laws to protect public employees who speak out about racial discrimination from retaliatory smear campaigns, including "whispering" campaigns that make reference to the contents of confidential personnel files.

      **B.**    **Plaintiff's Counsel's Statements to the Press Regarding the Merits of Mr. Alston's Appeal Do Not Justify the Proposed Sanctions.**

The new fee petition quotes Plaintiff's counsel commenting to the press that Judge O'Toole's ruling dismissing the complaint against Mr. Spiegel is "dangerous" because it licenses town meeting members, such as Mr. Spiegel, to go through employee personnel files. (Docket No. 159). Mr. Spiegel argues that this statement supports a "substantial sanction" to ensure that Plaintiff's counsel does not make further frivolous claims. The last quote from Plaintiff's counsel in the cited article, which Mr. Spiegel does not quote, reads, "As soon as we can appeal, we're going to appeal."  See Emma R. Murphy, *Judge dismisses Brookline defendant in Gerald Alston case*, Brookline TAB (Aug. 15, 2017), http://brookline.wickedlocal.com/news/20170815/judge-dismisses-brookline-defendant-in-gerald-alston-case.

Mr. Spiegel does not identify any rule or case that prohibits Plaintiff's counsel from commenting on the merits of Mr. Alston's appeal. Imposing sanctions on lawyers for speaking publicly about appeals would tend to insulate the district court's decisions from review and criticism and likely violate the First Amendment. Cf. Hill v. State Street Corp., 794 F.3d 227, 230 (1st Cir. 2015) (noting the importance of "protecting against the possibility that a district court could effectively immunize its decisions from review by declaring any appeal frivolous.") It must be stressed that Plaintiff's counsel stands by the comments made in the newspaper and intends to pursue that line of argument on appeal.

### C. The Basis for Sanctions is Not Clear.

The manner in which sanctions were imposed by the Court and then modified by Judge O'Toole has left Plaintiff's counsel without a clear understanding of what conduct is being sanctioned and why. See Fed.R.Civ.P. 11(c)(6) ("An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction.") Although Mr. Spiegel's motion for sanctions was fully briefed, the Court did not make a recommendation about sanctions in ruling on Mr. Spiegel's first motion to dismiss last fall. (See Docket Nos. 72) Without mentioning sanctions, Judge O'Toole overruled the Court's recommendation of dismissal with prejudice and allowed Mr. Alston to replead his claims against Mr. Spiegel. (See Docket No. 75) Neither the Court nor Judge O'Toole held an oral argument on Mr. Spiegel's motion to dismiss and no warning was provided to Plaintiff's counsel about sanctions with regards to Mr. Alston's claims against Mr. Spiegel.

After Mr. Alston refiled his claims against Mr. Spiegel, the Court again recommended dismissal with prejudice and again made no recommendation with respect to sanctions. (See

Docket No. 98) On April 26, 2017, Judge O'Toole adopted the Court's recommendation of dismissal without referencing sanctions. (See Docket No. 105)

On May 15, 2017, defendant Joslin Murphy submitted an affidavit to the Court attaching a copy of a Brookline Justice League media advisory. (See <u>Exhibit A</u>) The advisory, which lists Plaintiff's counsel as the contact, noticed a press conference to call for a "just and speedy determination" of Mr. Alston's lawsuit and indicated that no schedule had been set and no hearings or conferences had been held in the case, which had been pending since December 2015. (Id.) The advisory noted that the lawsuit charged the Town of Brookline with "systemic discrimination and retaliation against people who report racist conduct." (Id.) On May 23, 2017, counsel for Mr. Spiegel prepared and sent emails "for Rule 11 hrg." (See Docket No. 159-1) The next day the Court sent out a notice of a hearing on Mr. Spiegel's motion for sanctions. (Docket No. 109)

At the hearing, the first to be held in Mr. Alston's case, the Court ordered sanctions against Plaintiff's counsel on the grounds that it was frivolous to refile substantially the same complaint against Mr. Spiegel after the Court had recommended the complaint be dismissed with prejudice. (See Docket No. 132) The Court indicated, however, that sanctions were not warranted prior to her report and recommendation. (Id.) On August 7, 2017, Judge O'Toole adopted the Court's recommendation of sanctions; but, at Mr. Spiegel's invitation, he extended the application of sanctions to <u>before</u> the Court's initial recommendation of dismissal. (See Docket No. 153) Judge O'Toole did not "describe the sanctioned conduct or explain the basis for the sanctions." <u>See</u> Fed.R.Civ.P. 11(c)(6).

By imposing sanctions for conduct before the entry of the Court's initial report and recommendation, Judge O'Toole abandoned the Court's premise for recommending sanctions in

the first place—that the Court's recommendation of dismissal with prejudice (which was not adopted by Judge O'Toole) placed Plaintiff's counsel on notice that Mr. Alston's claims were sanctionable. As the Court acknowledged at the hearing, this premise cannot justify imposing sanctions <u>before</u> the Court's "warning," which is precisely what Judge O'Toole has now ordered. Plaintiff's counsel is therefore left without a clear understanding of the basis for sanctions.

It is incomprehensible that a claim against Mr. Spiegel that did not warrant being dismissed with prejudice in the fall of 2016 could be found to be sanctionable in the summer of 2017. What is the basis for these sanctions? What conduct are they intended to deter?

        **D.**        **Plaintiff's Counsel Should Not Have to Pay for Martin Rosenthal's Efforts to Lobby the DICR Commission Regarding its Statement on Institutional Racism.**

Martin Rosenthal's entries include 8.5 hours that relate in some form or another to a statement made by the Town of Brookline's Diversity, Inclusion, and Community Relations Commission ("DICR Commission") that the Board of Selectmen had "allowed a culture of institutional racism to exist," including by promoting Lieutenant Paul Pender to Captain after he left the N-word on Mr. Alston's voicemail. (Docket No. 159-1)  On March 13, 2016, Mr. Rosenthal billed 3 hours to, among other things, review the DICR Commission's "draft clarification" of their statement and to prepare "emails to DICR." (Id.) On March 14, 2016, Mr. Rosenthal billed 3 hours to, among other things, prepare "email to some DICR members." (Id.) On April 5, 2016, Mr. Rosenthal billed 2.5 hours to, among other things, "attend DICR meeting." (Id.)

As a result of a FOIA request, much of Mr. Rosenthal's correspondence with members of the DICR Commission and with Town officials regarding the Commission's statement on institutional racism in Brookline is a public record. The correspondence shows that Mr.

Rosenthal represented himself as acting as a concerned citizen rather than on behalf of Mr. Spiegel when he communicated with the Commission and Town officials about the statement. For instance, Mr. Rosenthal asked the DICR Commission's director to say that Mr. Rosenthal's proposed "addendum" to the Commission's statement was not motivated by the Alston case, but rather by his long interest in "these issues." (See Exhibit B) ("PS: I'm indifferent whether my name gets mentioned; but if it does, I request that my explanation be summarized—that it's not b/c of the Alston case but my decades of interest in these issues--& empowering the Comm'n (& its predecessor HRYRC.")

Mr. Rosenthal's communications with the DICR Commission expressly defended the Selectmen from the charge of institutional racism, not Mr. Spiegel. For instance, on March 13, 2016, Mr. Rosenthal argued to Commissioner Tony Naro that accusing the Selectmen of institutional racism was the equivalent of calling a Black person the N-word, unless the accusation of racism was supported by proof beyond a reasonable doubt or at least clear and convincing evidence. (See Exhibit C) ("As to the 'culture . . .," using racist as an adjective-description-depiction of a person or entity (which is essentially what you folk sd.) like 'anti-semitic' or 'sociopath' is an incendiary allegation that must be used w/ far far more caution/foundation than saying, for example, 'a townhall with seriously inadequate diversity" or "a police department with still too much unconscious bias and resulting profiling." It connotes—indeed denotes—both breadth-depth and quantitatively-qualitatively. Ironically, unless well-founded (e.g. 'beyond reas. doubt' or at least 'clear & convincing') it's basically a loaded 'smear' word with similar force as—ironically—the 'N-word.'")

It is not proper to compensate Mr. Spiegel for work Mr. Rosenthal represented was not being done on his behalf and which on its face appears to have been done for the benefit of the

Board of Selectmen. Although Mr. Rosenthal's (apparently paid) lobbying of the DICR Commission may have been for the indirect benefit of Mr. Spiegel, to the extent that Mr. Spiegel (like Mr. Rosenthal and other Town officials) is implicated in Brookline's culture of institutional racism, it does not relate to the legal defense that was presented by Mr. Spiegel in this Court. Neither Mr. Spiegel (nor the Court) substantively addressed institutional racism in Brookline in connection with Mr. Spiegel's motion to dismiss. Mr. Spiegel (and the Court) focused on the narrower question of whether smearing Mr. Alston's name with gossip (purportedly from two unidentified Black firefighters who worked for Mr. Spiegel) and with innuendo about the contents of his personnel file, the week after Mr. Alston made a public appeal to the Selectmen to investigate racism within the Fire Department, caused Mr. Alston harm.

### E.   Communications regarding Insurance Coverage are Not Compensable.

Mr. Rosenthal billed 8.7 hours on matters that appear to concern possible insurance coverage for the claim against Mr. Spiegel. (Docket No. 159-1) The relevant entries are in 2016: May 17, June 7, 11, 14, July 1-2, August 11-12, and September 24-25.  Mr. Rosenthal does not hold himself out as an expert in insurance coverage disputes and the entries are not sufficiently detailed to determine whether the time expended was reasonable.

## Conclusion

For the foregoing reasons, counsel respectfully requests that this court deny the fee petition.

Respectfully submitted,

/s Brooks A. Ames
Brooks A. Ames (BBO #641192)
BROOKLINE JUSTICE LEAGUE, INC.
1309 Beacon Street, 3rd Floor
Brookline, MA 02446
brooksames1@gmail.com
(617) 763-5526

Dated: September 28, 2017

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document filed through the ECF system on September 28, 2017 will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be served on those indicated as non-registered participants.

/s Brooks A. Ames