UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GERALD ALSTON,
 Plaintiff,

  v.                     CIVIL ACTION NO. 15-13987-GAO

TOWN OF BROOKLINE, MASSACHUSETTS,
BROOKLINE BOARD OF SELECTMEN,
BETSY DEWITT,
KENNETH GOLDSTEIN,
NANCY DALY,
JESSE MERMELL,
NEIL WISHINSKY,
BERNARD GREENE,
BEN FRANCO,
NANCY HELLER,
SANDRA DEBOW, and
JOSLIN MURPHY, each of them in his or her individual and official capacity,
STANLEY SPIEGEL, in his individual capacity, and
LOCAL 950, INTERNATIONAL ASSOCIATION OF FIREFIGHTERS,
 Defendants.

REPORT AND RECOMMENDATION ON
DEFENDANT STANLEY SPIEGEL'S AMENDED FEE PETITION (#159).

KELLEY, U.S.M.J.

I. Introduction.

After a hearing on June 8, 2017, I concluded that defendant Stanley Spiegel's renewed motion for sanctions pursuant to Fed. R. Civ. P. 11 (#91) as to plaintiff's attorney, Brooks Ames, should be allowed (#130), and I issued a Report and Recommendation to that effect on June 9, 2017, which is incorporated here by reference. (#132.)[1] Specifically, I recommended "that under

---

[1] Reference will be made to the background of this case as necessary, otherwise familiarity with the facts is presumed.

Rule 11(c)(4), the District Court order Attorney Ames to pay attorneys' fees and other expenses incurred by Spiegel after the District Court dismissed the first amended complaint against him and allowed [plaintiff Gerald] Alston to replead." (#132 at 12.) Attorney Ames objected to the Report and Recommendation. (#138.) Spiegel also filed an objection, arguing that the award of fees should be calculated from an earlier date. (#139.) The district court, O'Toole, J., adopted the Report and Recommendation to the extent that it recommended imposing sanctions, but ordered that the award of fees and expenses should run from the date on which counsel for Spiegel served plaintiff's counsel with a Rule 11 "safe harbor" notice, March 8, 2016. (#153.)

## II. Rule 11.

Federal Rule of Civil Procedure 11(b) provides, in relevant part:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> *****
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

*See*, *e.g.*, *Eldridge v. Gordon Bros. Grp., L.L.C*., 863 F.3d 66, 87–88 (1st Cir. 2017); *Caffeinate Labs, Inc. v. Vante Inc*., No. CV 16-12480-GAO, 2017 WL 2889031, at *1 (D. Mass. July 6, 2017) (citations omitted) ("Rule 11 is designed to deter parties from pursuing unwarranted or frivolous claims or defenses."); *Lamboy-Ortiz v. Ortiz-Velez*, 630 F.3d 228, 247 (1st Cir. 2010) ("Rule 11 . . . finds its justification exclusively in deterrence.").[2]

---

[2] In relevant part, the 1993 advisory committee notes to Rule 11 read:

> Since the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty. However, under unusual circumstances, particularly for (b)(1) violations, deterrence may be ineffective unless the sanction not only requires the person violating the rule to make a monetary payment, but also directs that some or all of this payment be made

Having determined that Attorney Ames violated Rule 11(b) by repeatedly filing essentially frivolous complaints against Spiegel, Rule 11(c)(1) authorizes the imposition of sanctions. *See*, *e.g.*, *Thomas Tierney v. Town of Framingham*, No. CV 17-11657-FDS, 2018 WL 850078, at *7 (D. Mass. Feb. 13, 2018). Rule 11 mandates that "[a] sanction imposed under this rule must be limited to what suffices to deter repetition of conduct." Fed. R. Civ. P. 11(c)(4). When the imposition of attorneys' fees is warranted, the court may issue "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4); *see*, *e.g.*, *Yokozeki v. Carr-Locke*, No. CV 13-12587-MBB, 2017 WL 1160569, at *5 (D. Mass. Mar. 28, 2017), *on reconsideration in part*, No. CV 13-12587-MBB, 2017 WL 2818981 (D. Mass. June 29, 2017). With this framework in mind, the court will first calculate reasonable attorneys' fees and then decide what portion of them should be assessed against Attorney Ames for purposes of deterrence.

### III. Reasonable Attorneys' Fees and Costs.

Spiegel has filed an amended fee petition in which he seeks $95,260.00 in attorneys' fees and $1,424.27 in costs.[3] (#166 ¶ I.) The proposed hourly rate for Attorney Martin Rosenthal and Attorney David Duncan is $500.00 per hour, while the proposed rate for Attorney Naomi Shatz is $300.00 per hour.

---

> to those injured by the violation. Accordingly, the rule authorizes the court, if requested in a motion and if so warranted, to award attorney's fees to another party. Any such award to another party, however, should not exceed the expenses and attorneys' fees for the services directly and unavoidably caused by the violation of the certification requirement. . . . Moreover, partial reimbursement of fees may constitute a sufficient deterrent with respect to violations by persons having modest financial resources. . . .

Fed. R. Civ. P. 11.

[3]Spiegel's original fee petition (#141) sought $45,830.00 in attorneys' fees and $291.95 in costs. The petition was amended (#159) to include fees and expenses incurred after March 8, 2016, raising the attorneys' fees to $92,760.00 and $1,424.27 in costs. The fee petition was supplemented (#166) by $2,500 to include hours preparing a reply to plaintiff's objection, increasing the attorneys' fees to $95,260.00.

> The First Circuit has explained how a court is to calculate reasonable attorneys' fees:
>
> The lodestar approach is the method of choice for calculating fee awards. Under this lodestar approach, a district court first calculate[s] the number of hours reasonably expended by the attorneys for the prevailing party, excluding those hours that are excessive, redundant, or otherwise unnecessary. The court then determines a reasonable hourly rate or rates—a determination that is often benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience, and competence. Multiplying the results of these two inquiries yields the lodestar amount. The court may then adjust the potential award based on factors not captured in the lodestar calculation.

*Matalon v. Hynnes*, 806 F.3d 627, 638 (1st Cir. 2015) (internal quotation marks and citations omitted); *Gross v. Sun Life Assurance Co. of Canada*, 880 F.3d 1, 22 (1st Cir. 2018); *Hefter Impact Techs., LLC v. Sport Maska, Inc.*, No. CV 15-13290-FDS, 2017 WL 5798642, at *2 (D. Mass. Nov. 28, 2017); *Anderson v. Brennan*, 267 F. Supp. 3d 270, 274 (D. Mass. 2017). "The party seeking fees must submit evidence in support of the hours worked and rates claimed; if the documentation is inadequate, the award may be reduced." *Marshall v. Rio Grande River Ltd. Partnership*, 162 F. Supp. 3d 54, 58 (D. Mass. 2016) (citation omitted).

### A. Reasonable Hours Expended.

This case was overlitigated by Spiegel's lawyers. The allegations against Spiegel in the amended complaint were limited to five paragraphs;[4] the changes from the first to the second amended complaint were cosmetic, and certainly not substantive. Yet Spiegel's bill essentially doubled when the time spent litigating the first motion to dismiss was added to the fee, *see* n.3, *supra*. The hours spent on the motion to dismiss the second amended complaint should not have been approximately equal to the time spent on the initial motion to dismiss. Much of the time responding to the second amended complaint was spent repackaging earlier filings. With regard to

---

[4] In the amended complaint, Spiegel is identified as a white Brookline resident who serves as an elected town meeting member and an appointed member of the advisory committee. (#21 ¶ 117.) Spiegel was mentioned in four additional paragraphs of the amended complaint, #21 ¶¶ 208, 230, 231, 234.

the second amended complaint, Spiegel filed a motion to dismiss (#80) together with an eight-page memorandum contending that the second amended complaint "does not allege anything substantially new or different about Spiegel's actions." (#81 at 2.) Plaintiff submitted a nine-page opposition in which he incorporated his opposition to Spiegel's first motion to dismiss and his objection to the Report and Recommendation. (#84.) Spiegel filed a renewed motion for Rule 11 sanctions (#91) and a ten-page reply brief. (#95.)

On February 1, 2017, I issued a Report and Recommendation (#98) recommending Spiegel's motion to dismiss be granted, with prejudice. Specifically, I noted that

> the changes made from the first to the second amended complaint with respect to defendant Spiegel are minimal. Comparison of the two documents reveals that many of the facts and allegations were simply copied and repled in a different paragraph structure. The only arguable substantive changes in the new complaint are as follows: (1) labeling Spiegel an 'unofficial surrogate' of the Board; (2) the addition of two sentences describing Spiegel's conduct when he confronted the Alston supporter; and (3) additional information about the letter Spiegel circulated to Town Meeting members and a comment Spiegel made at that time.

(#98 at 7.) (internal citations omitted). Plaintiff objected to this Report and Recommendation in a nine-page pleading. (#99.) Spiegel responded with an eight-page response, in which he relied on "reasons that have been repeatedly set out" in his prior filings. (#101 at 8.)  In a subsequent pleading, Spiegel again acknowledged that "[g]iven the opportunity to amend his complaint, [Attorney Ames] effectively re-filed the same complaint, adding a handful of immaterial additional allegations." (#151-2 at 7-8.)

While Spiegel's counsel views this course of events as underscoring the frivolous nature of Attorney Ames' pleadings, that observation cuts both ways. Since plaintiff's pleadings were repetitious, it was unwarranted for Spiegel's counsel repeatedly to file lengthy responses

incorporating versions of the same arguments. A ten percent reduction will be taken to reflect these redundant hours.[5]

1. Attorney Rosenthal.

Attorney Rosenthal's hours billed on 03/13/2016, 03/14/2016 and 04/05/2016, a total of 8.5 hours, should be excluded.[6] (#159-1; #161 at 6-8.) The hours billed on those days are for activity with respect to Brookline's Diversity Commission (DICRC), which does not "directly result[] from the violation." Fed. R. Civ. P. 11(c)(4). The same is true with respect to the 9.2 hours billed by Attorney Rosenthal on insurance coverage issues on 04/28/2016, 05/04/2016, 05/17/2016, 06/07/2016, 06/11/2016, 06/14/2016, 07/01/2016, 07/02/2016, 08/11/2016, 08/12/2016, and 09/24/2016.[7] (#159-1; #161 at 8-9.) Exploration of potential insurance coverage, while related to the representation of his client, is nonetheless peripheral for present purposes.

Much or all of Attorney Rosenthal's time on a substantial number of days was spent on telephone calls and/or reading and drafting emails. *See*, *e.g*., #159-1, 04/01/2016, 04/02/2016, 04/06/2016, 04/09/2016, 04/11/2016, 04/15/2016, 04/19/2016, 05/05/2016, 05/24/2016, 05/25/2016, 09/02/2016, 09/13/2018 09/17/2016, 09/19/2016, 09/22/2016, 09/23/2016, 09/25/2016, 09/29/2016, 09/30/2016, etc. Given the block billing entries where Attorney

---

[5] An argument could be made that the case was also overstaffed. The allegations against Spiegel have been limited, discrete and straightforward throughout the iterations of the complaint. It was not necessary for three attorneys -- two partners (treating Attorney Rosenthal, a solo practitioner, as a partner) and one associate -- all to draft and revise the same motions to dismiss, motions for sanctions and the replies, or for all three to attend a court hearing. That said, the extra time is accounted for in the ten percent reduction.

[6] To the extent that Attorney Rosenthal's hours are block billed on these dates, the entire entry is excluded. Block billing involves grouping several tasks completed during a day into a single entry for that day. *See Hermida v. Archstone*, 950 F. Supp. 2d 298, 311-12 (D. Mass. 2013). Block billing is disfavored because it lacks specificity and raises questions about the accuracy of the time recorded. *See Ciolino v. Eastman*, 2016 WL 6246757, *3 (D. Mass. Oct. 25, 2016).

[7] To the extent that Attorney Rosenthal's hours are block billed on these dates, the entire entry is excluded.

Rosenthal engaged in several tasks, including telephone call and emails, it is impossible to allocate the time among the activities.[8] Rather than applying a different hourly rate for core versus non-core activities, the court will apply the same reasonable hourly attorney rate to all entries, but will reduce the hours for which recompense is sought by thirty percent to account for time spent on "less demanding" tasks[9] and for block bill entries. *See Matalon*, 806 F.3d at 638–40.

Applying these deletions and reductions, Attorney Rosenthal's reasonable hours are 56.26.

2. <u>Attorney Duncan</u>.

Attorney Duncan also spent time on less demanding tasks such as telephone calls, conferences and emails (*see*, *e.g*., #159-2, 03/09/2016, 03/14/2016, 04/02/2016, 04/04/2016, 04/09/2016, 04/14/2016, 09/30/2016, 11/01/2016, etc.), but not with the frequency of Attorney Rosenthal.[10] A twenty percent reduction will be applied to account for this less demanding work, including work performed on the fee petition. In all other respects, the remaining hours billed by Attorney Duncan, 49.92, were reasonable.[11]

---

[8] From September 30, 2016 forward, Attorney Rosenthal employs a shorthand key to describe the tasks for which he is billing that is not particularly user-friendly. (#159-1, Exh. A.) For example, the entry for June 14, 2017 reads: "R SAS's eml q & DD-NS eml; C DD; Pc SS." Further, he continues to block bill, not only tasks in a single day, but multiple tasks over a number of days. Again, by way of example, a single entry for 9 hours of work covering the period from June 1-7, 2017 reads as follows: "P for R-11 hrg 6/8th (R chron'y, pleadings, f's Ames' cites) 2 Pc's DD; C DD-NZ, Pc SS." *Id*. It is Spiegel's burden to establish the fees sought, and documentation of this sort does not enable the court to make an informed determination with respect to whether the hours billed were reasonable.

[9] In addition to the time spent on telephone calls and emails, the First Circuit has "indicated that certain components of fee awards (such as work performed in preparing and litigating fee petitions) may be calculated at discounted rates due to the comparative simplicity of the task." *Matalon*, 806 F.3d at 639 (citing *Torres–Rivera v. O'Neill–Cancel*, 524 F.3d 331, 340 (1st Cir. 2008)).

[10] Although Attorney Duncan also engages in block billing, most of his entries reflect multiple substantive tasks.

[11] Since a ten percent reduction was taken on Attorney Rosenthal's billing for redundant pleadings, the same reduction will not be applied twice.

3. <u>Attorney Shatz</u>.

The time spent by Attorney Shatz on the fee petition should be reduced by twenty percent, as it is less demanding work. In all other respects, her hours, 33.1, are reasonable.[12]

B. <u>Reasonable Hourly Rates</u>.

With respect to the second part of the lodestar analysis,

> Courts ought consider the prevailing market rates in the relevant community when called upon to determine a reasonable hourly rate for attorneys' fees. Prevailing market rates are those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. Moreover, courts may take account of many factors in determining reasonable hourly rates, including the type of work performed, who performed it, the expertise that it required, and when it was undertaken.

*Norkunas v. HPT Cambridge*, LLC, 969 F. Supp. 2d 184, 197 (D. Mass. 2013) (internal quotation marks and citations omitted). Spiegel's three attorneys have filed affidavits detailing their impressive credentials in support of their fee petition. Attorney Rosenthal received his J.D. from Stanford Law School in 1971, and has been licensed to practice law in Massachusetts since 1973. (#141-1 ¶ 1.)[13] He has had a lengthy career as a criminal defense trial attorney, supervising attorney, training director at the Committee for Public Counsel Services (CPCS) and author. *Id*. ¶¶ 2, 7. Since 1992 Attorney Rosenthal has been a solo practitioner. *Id*.¶ 4. He has held positions and leadership roles on bar-related and civic committees. *Id*. ¶¶ 5, 6. Attorney Rosenthal's practice is entirely litigation, predominantly consisting of criminal defense work and bar discipline cases. *Id*. ¶ 9. His current hourly rate for private clients is in the range of $600-$750. *Id*. ¶ 11. In this case he

---

[12] Attorney Shatz billed no time for emails, and the time billed for telephone calls was de minimis. *See* #159-3, Exh. A, time entries for 03/15/2016, 04/14/2016.

[13] Attorney Rosenthal is also admitted to the bar of the United States District Court for the District of Massachusetts and the First Circuit Court of Appeals. (#141-1 ¶ 1.)

is requesting a reduced rate of $500.00 per hour due to his "lesser civil litigation and civil rights cases experience." *Id.*

Attorney Duncan graduated from the University of Pennsylvania Law School in 1982 and has been admitted to practice law in Massachusetts since 1986. (#141-2 ¶ 1.)[14] He has been a partner in his current firm, Zalkind, Duncan & Bernstein LLP, or its predecessors, since 1990. *Id.* ¶ 3. Attorney Duncan describes his practice as being primarily litigation with an emphasis on criminal defense work and also student disciplinary matters. *Id.* ¶¶ 5, 6. He has done some civil work, including two cases involving First Amendment issues. *Id.* ¶ 6. Attorney Duncan states that his hourly rate for private clients ranges from $600-$750 per hour. *Id.* ¶ 7. In this case he is requesting a reduced rate of $500.00 per hour in light of the fact that he has "not extensively litigated civil rights cases." *Id.*

Attorney Shatz, a Yale Law School graduate, has been licensed to practice law in Massachusetts since 2010, and has been an associate at Zalkind, Duncan & Bernstein LLP since 2012. (#141-3 ¶¶ 1-2.)[15] While her principal area of practice is civil litigation, Attorney Shatz also engages in criminal defense work and student disciplinary matters. *Id.* ¶ 6. She currently charges an hourly rate of $325-$425 for private clients, but is requesting a reduced rate of $300.00 per hour in this case. *Id.* ¶ 7.

---

[14] Attorney Duncan has also been admitted to the bars of the Supreme Court, the United States Courts of Appeal for the First, Third, Ninth and Eleventh Circuits, the United States District Courts for the District the of Massachusetts and the Eastern District of Pennsylvania and the Commonwealth of Pennsylvania. (#141-2 ¶ 1.)

[15] Attorney Shatz has also been admitted to the bars of the United States Courts of Appeal for the First and Second Circuits, the United States District Courts for the District of Massachusetts and the Southern and Eastern District of New York, and the state of New York. (#141-3 ¶ 1.)

Apart from their own affidavits, as the sole support for their requested hourly rates,[16] Spiegel's counsel have submitted the affidavit of David W. White, Jr., a litigator since 1986 and a named partner in his firm who specializes in personal injury and insurance law. (#141-4 ¶¶ 1-2.) While his affidavit reflects that Attorney White is an accomplished lawyer, *id.* ¶ 5, he claims no experience in civil rights litigation. Attorney White opined that:

> Based on the experience, education and skill of these attorneys, and based on my knowledge of the legal communities – and fees – in Boston and Massachusetts, I believe that these hourly rates are very reasonable and are fully justified, including considerations of the nature and obvious intensity of the case at hand, including in the Brookline community.

*Id.* ¶ 10.

Given his limited experience in the civil rights realm, the fees requested by Attorney Rosenthal are excessive. *See Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) ("[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community *for similar services* by lawyers of reasonably comparable skill, experience and reputation.") (emphasis added); *E.E.O.C. v. AutoZone, Inc.*, 934 F. Supp. 2d 342, 356-58 (D. Mass. 2013). "Courts generally accord additional weight to an attorney's expertise and experience in determining a reasonable fee only to the extent that her expertise and experience is relevant to the subject matter of the litigation." *E.E.O.C.,* 934 F. Supp. 2d at 357. In recent years, the prevailing rate for experienced civil rights attorneys has been set at around $400.00 per hour. *See Ciolino v. Eastman*, No. CV 13-13300-ADB, 2016 WL 6246757, at *1 (D. Mass. Oct. 25, 2016) (reviewing cases); *E.E.O.C.*, 934 F. Supp. 2d at 358; *Marshall*, 162 F. Supp. 3d at 59; *Carpaneda v. Domino's Pizza, Inc.*, 89 F. Supp. 3d

---

[16] For example, defense counsel has not provided the court with any record of recent attorneys' fee awards or recent cases "showing rates for attorneys with equal or lesser experience." *Carpaneda v. Domino's Pizza*, Inc., 89 F. Supp. 3d 219, 228 (D. Mass. 2015).

219, 228-29 (D. Mass. 2015). A reasonable rate for Attorney Rosenthal in this case is $350.00 per hour. *See*, *e.g.*, *E.E.O.C.*, 934 F. Supp. 2d at 358 ("Godkin's proposed rate of $425 is too high, given the apparent dearth of his employment discrimination experience. In light of Godkin's extensive record as an accomplished federal litigator, however, an upward adjustment can be made. Accordingly, this Court holds that Godkin is entitled to a rate of $350 per hour."); *Porter v. Cabral*, No. CIVA 04-11935-DPW, 2007 WL 602605, at *13 (D. Mass. Feb. 21, 2007), *aff'd sub nom. Cabral v. U.S. Dep't of Justice*, 587 F.3d 13 (1st Cir. 2009) ("Given Mr. Savage's limited experience in civil rights litigation, but rather lengthy and meaningful experience in civil and criminal litigation, I find that an hourly rate of $325, slightly less than that of the most experienced civil rights attorneys like Mr. Schwartz, to be appropriate."). A reasonable attorney's fee for Attorney Rosenthal is $17,503.50.

The same hourly rate of $350.00 should be applied for Attorney Duncan, for the same reasons. A reasonable attorney's fee for Attorney Duncan is $17,472.00.

While Attorney Shatz states that she has "litigated . . . civil rights . . . claims in this court, other federal district courts, and Massachusetts in state courts" (#141-3 ¶ 5), no further explanation of the depth or breadth of this experience has been proffered. Based on the evidence provided, an appropriate rate for Attorney Shatz is $250.00 per hour. *See*, *e.g.*, *Tri-City Community. Action Program, Inc. v. City of Malden*, 680 F. Supp. 2d 306, 316 (D. Mass. 2010); *Ferraro v. Kelley*, No. CIV.A. 08-11065-DPW, 2011 WL 576074, at *5–6 (D. Mass. Feb. 8, 2011). A reasonable attorney's fee for Attorney Shatz's work would be $8,587.50.

C. Costs.

Spiegel seeks $1,424.27 in expenses from March 9, 2016. (#159-2 ¶ 3 and Exh. B.)[17] The bulk of the expenses relate to Westlaw research. Although Spiegel seeks to recoup the costs of Westlaw research undertaken on 03/31/2016 (two separate entries), 04/19/2016 (two separate entries), 05/31/2016, 10/29/2016, 05/31/2017 and 07/31/2017, there are no corresponding entries on the attorney time sheets for those dates. Similarly, although Spiegel requests the costs for Pacer research conducted on 06/30/2016, 09/17/2016 and 01/03/2017, there are no attorney time entries for those dates.[18] Spiegel has failed to establish that these costs were incurred by his attorneys in his case, and so they are not recoverable.

Costs for Westlaw usage are also sought for 09/21/2016, 09/29/2016, 11/25/2016, 02/19/2017, and 06/30/2017; there are time entries for either Attorney Duncan or Attorney Shatz on each those dates. The compensation costs for Westlaw legal research is $393.41. There are attorney time entries on 09/02/2016 and 09/30/2016, the final dates on which Pacer research is noted. A total of $3.20 is compensable for use of Pacer.

IV. Additional Considerations.

Attorney Ames advances arguments against the imposition of sanctions based on the factors set out in the advisory note to Rule 11.[19] He states that he has been licensed to practice law

---

[17] Since Attorney Duncan submitted the expense sheet (#159-2 ¶ 3 and Exh. B), the court assumes that these are expenses incurred by his firm, not Attorney Rosenthal.

[18] Attorney Shatz states in her affidavit that the attorneys "used no paralegal time" (#141-3 ¶ 8) and have billed for none, so the Westlaw and Pacer usage cannot be attributable to anyone except the attorneys.

[19] These factors include:

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or

in Massachusetts since 1998, and spent the first five years of his career as a trial lawyer for CPCS. (#147-1 ¶ 3.) For the next two years he worked at a medical malpractice defense firm, and then in 2005 Attorney Ames joined DLA Piper in Boston practicing in the areas of complex business litigation and representing large international companies that were the subject of government investigations. *Id.* ¶¶ 4-5. In 2014 he left DLA Piper and established his own practice. *Id.* ¶ 9. The following year Attorney Ames, along with two other Brookline residents (one of whom is his wife), founded a non-profit corporation "to address systemic justice issues in Brookline." *Id.* The majority of his professional time is now devoted to the work of the non-profit. *Id.*

Attorney Ames notes that in his nineteen-year career, he has never been sanctioned.[20] *Id.* ¶ 10. Further, in his affidavit, Attorney Ames states that his "household income dropped substantially after I chose to leave DLA Piper and proposed sanctions would have a severe financial impact on our family." (#147-1 ¶ 9.)[21] This is a legitimate factor for the court to consider

---

        expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; [and] what amount is needed to deter similar activity by other litigants. . . .

Fed. R. Civ. P. 11 Advisory Committee's Note (1993).

[20] In the first Report and Recommendation I issued, I found that the failure to state a claim against Spiegel "would not be solved by clearer pleading. Accepting all of the allegations as true, it is plain that Spiegel's innocuous actions simply have not violated any of Alston's rights." (#72 at 38.) Judge O'Toole adopted the Recommendation to the extent that the complaint against Spiegel was dismissed, but plaintiff was given "a chance to replead his claims." (#75 at 2.) It is ironic Attorney Ames claims some bewilderment at the prospect of being sanctioned when he argues in his opposition to Spiegel's fee petition that Attorneys Rosenthal and Duncan's time expended on the second motion to dismiss was excessive "[g]iven that this was the second motion to dismiss **and Mr. Alston's claims against Mr. Spiegel did not change substantially**." (#147 at 8.) The opportunity to replead should not have been understood as an invitation simply to repeat allegations that the court unequivocally had held were deficient. Rather, it gave plaintiff an opportunity to allege additional facts sufficient to state a claim. He failed to do that.

[21] In an attempt to counter this statement, Attorney Rosenthal makes reference to Attorney Ames' lineage and his father's successful legal career, both of which are irrelevant. (#152-1, Exh. A ¶ 6.) Equally unpersuasive, and frankly, inappropriate, is Attorney Rosenthal's surmise, "on information and belief in the community that Ames actually has far more than ample financial assets both to finance his current

in determining the amount of a sanction to be imposed. *See Id.*; *Irwin Indus. Tool Co. v. Bibow Indus., Inc.*, No. CIV.A. 11-30023-DPW, 2014 WL 1323744, at *8 (D. Mass. Mar. 31, 2014) (noting that attorney "operates a small law office and that the imposition of a large sanction could 'threaten financial disaster.'").

Lastly, it is important to bear in mind that the First Circuit, albeit eight years ago, noted that sanctions in "the mainstream in this circuit . . . typically amount to less than $10,000." *Lamboy-Ortiz*, 630 F.3d at 249. It is true that the *Lamboy-Ortiz* decision is distinguishable from the case at bar. *See* #152-1 at 2-3. However, so, too, is the case upon which Spiegel relies, *Rogers v. Cofield*, 935 F. Supp. 2d 351, 362-85 (D. Mass. 2013), where attorneys' fees and costs were awarded to compensate pursuant to a statute, 42 U.S.C. § 1988,[22] rather than as a sanction to deter under Rule 11.

V. Recommendation.

Having considered and weighed all of the relevant factors, I find that the total of $43,560.00 "exceeds the amount of reasonable attorney's fees 'warranted for effective deterrence.' Fed. R. Civ .P. 11(c)(4)." *Yokozeki,* 2017 WL 2818981, at *2. I find that the sum of $20,000.00 in attorneys' fees would serve as an effective deterrent. I RECOMMEND that a sanction in the amount of $20,396.61, comprised of attorneys' fees plus costs, be imposed upon Attorney Ames.

VI. Review by District Court Judge.

The parties are advised that any party who objects to this Report and Recommendation must file specific written objections with the Clerk of this Court within 14 days of the party's

---

practice and to avoid 'severe financial impact.'" *Id*. Such conjecture is not evidence upon which the court may rely.

[22] The statute provides, in part: "In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988.

receipt of it. The objections must specifically identify the portion of the Recommendation to which objections are made and state the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health & Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

March 22, 2018

/s / M. Page Kelley
M. Page Kelley
United States Magistrate Judge