UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-13987-GAO

GERALD ALSTON,
Plaintiff,

v.

TOWN OF BROOKLINE, MASSACHUSETTS, BROOKLINE BOARD OF SELECTMEN, BETSY DEWITT, KENNETH GOLDSTEIN, NANCY DALY, NEIL WISHINSKY, BERNARD GREENE, BEN FRANCO, NANCY HELLER, SANDRA DEBOW, JOSLIN MURPHY, each of them in his or her individual and official capacity, and LOCAL 950, INTERNATIONAL ASSOCIATION OF FIREFIGHTERS,
Defendants.

OPINION AND ORDER
April 2, 2020

O'TOOLE, S.D.J.

This is a civil rights action brought by the plaintiff, Gerald Alston, a former firefighter for the Town of Brookline, asserting claims of racial discrimination and retaliation against the Town, various Town officials, and the firefighter's union. All defendants have moved for summary judgment in their favor. This Opinion and Order addresses the motions by the Town and the individual defendants. A separate Opinion and Order addresses the motion by the union.

**I.   Brief Factual Background**

The record in this case is voluminous. The operative fourth amended complaint is the plaintiff's fifth iteration of his claims. Discovery has been extensive. The Town's motion is supported by over two hundred exhibits; Alston's opposition is supported by two dozen exhibits.

The following facts gleaned from the record are not subject to genuine dispute and are sufficient for present purposes:

Alston is an African American. He was employed by the Town as a firefighter beginning in 2002. In 2010 a white superior officer in the fire department left a message on Alston's telephone that referred to him using an ugly racial epithet. Alston was greatly upset by that message and demanded that the Town take disciplinary action against the employee who left the message. The Town suspended the offender for a brief period, but Alston was not satisfied. It is this incident, and Alston's vigorous disagreement with it, that hangs over this entire controversy.

In 2013 Alston brought suit against the Town in the Massachusetts Superior Court alleging racial discrimination and retaliation under the State's anti-discrimination statute, Massachusetts General Laws Chapter 151B, Section 4. The complaint summarized his grievance this way: "In short, complaining about being called a 'f***ing n****r' by a white superior has resulted in the [fire] [d]epartment, down to nearly every last officer, joining together to make life as miserable as possible for Mr. Alston." (App. to Town's Mot. for Summ. J., Ex. 3 at ¶ 19 (dkt. no. 367-3).) The case was eventually dismissed with prejudice in July 2014 as a sanction for Alston's failure to comply with discovery obligations.

After the telephone incident, in the summer and fall of 2010 Alston was out of work because of a back problem, and he was seen in a number of medical encounters as a result. Medical notes from that period indicate that Alston was very angry about the way he felt he was being treated by the Brookline fire department. He was seeing a social worker for anger and anxiety. After he returned to work, he had some difficulty with co-workers. On November 24, 2010, he became so emotionally agitated at his fire station that EMTs took him, apparently with his consent, to the emergency department at the Beth Israel Deaconess Medical Center for evaluation. He was deemed after examination by attending psychiatrists to be fit for discharge home, but it was recommended that he not immediately return to work. He attended outpatient counseling with a

clinical social worker to deal with his persistent feelings of anger at how he perceived he had been treated by the Brookline fire department. As a result of the November 24 episode, Alston began an outpatient treating relationship with a psychiatrist, Dr. Michael Kahn. (See generally id. Ex. 6 (dkt. no. 373-6) (under seal).)

Alston returned to work in late January 2011. Workplace tension may have eased for a while for Alston, but on December 19, 2013, he noticed that someone had written the word "Leave" in accumulated dust on the side of one of the fire trucks in the station. He understood that to have been directed at him, and he reacted angrily. He showed it to two other firefighters and made some remarks about shooting people and "going postal" that could reasonably have been understood as threats of violent reaction. As a result, Alston was placed on leave pending an investigation into the incident. The investigation included obtaining an evaluation of Alston's "fitness for duty" by a psychiatrist retained by the department, Dr. Andrew Brown. After interviewing Alston and consulting with Dr. Kahn, Dr. Brown in substance recommended that Alston not be returned to duty until a stable plan for addressing his anger and potential for outbursts was put in place.

On May 14, 2014, fire department Chief Paul Ford wrote to Alston outlining the conditions suggested by Dr. Brown to be satisfied before Alston would be deemed fit for duty: (1) receiving ongoing psychiatric treatment, (2) permitting Brookline's occupational health nurse to monitor treatment progress, (3) completing an anger management course, (4) passing a fitness for duty evaluation, and (5) submitting to random drug testing for twenty-four months.[1] (Id. Ex. 3 at 2 (dkt. no. 367-10).)

---

[1] Some medical records indicated that Alston had at least occasionally used marijuana and cocaine.

A second fitness for duty evaluation by Dr. Brown was scheduled in the fall of 2014, but Alston's lawyer objected to examination by Dr. Brown. At the lawyer's request, the Town arranged for Alston to be evaluated by a psychiatrist not affiliated with the Town. In February 2015, Dr. Marilyn Price, a psychiatrist practicing at the Massachusetts General Hospital, interviewed Alston and submitted a detailed written assessment in mid-March. Dr. Price concluded that Alston should be returned to duty only if there could be "workplace accommodations" that would relieve the stress he had felt about what he perceived as unfair treatment by department personnel. Her suggested conditions were similar to Dr. Brown's.

Time went by with no progress in getting Alston back to work. In a letter to Alston's attorney dated February 5, 2016, Brookline's Town Counsel noted that Alston had been on paid leave for almost a year, an arrangement made to encourage his cooperation with Dr. Price's evaluation. The letter proposed March 7, 2016, as a return-to-work date and scheduled a February 10, 2016, drug screening, one of Dr. Price's conditions. Neither Alston nor his counsel responded to the letter, and Alston did not appear for the drug screening. Alston's paid leave was subsequently terminated because the Town had conditioned it on his cooperation; he was instead placed on sick leave.

A subsequent second proposed return-to-work date (and related drug screen) was similarly ignored by Alston. On August 17, 2016, the Town Administrator wrote to Alston notifying him that his termination was contemplated and that a hearing would be held before an outside hearing officer on August 30, 2016. The reason given for Alston's contemplated discharge was his inability to show that he could perform the essential functions of his job as a firefighter without accommodations or with accommodations to which he would agree. (Id. Ex. 77 (dkt. no. 367-77).)

4

At the pre-termination hearing, Alston did not testify and his attorney did not submit exhibits other than an unsworn written statement that Alston read into the record. Town Counsel offered to suspend the hearing if Alston contended that he had the capacity to return to work, provided that he participate in a fitness for duty evaluation. Alston declined the offer. The hearing officer's final report recommended Alston's termination. On October 5, 2016, the Select Board considered the hearing officer's report at a meeting and voted to terminate Alston's employment. This suit was about ten months old when he was terminated.

## II.   Discussion

"Summary judgment is appropriate where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Audette v. Town of Plymouth, MA, 858 F.3d 13, 19 (1st Cir. 2017) (quoting Mulloy v. Acushnet Co., 460 F.3d 141, 145 (1st Cir. 2006)). Although the record is construed in a light most favorable to the non-moving party, the Court need not consider "conclusory allegations, improbable inferences, [or] unsupported speculation." Mulloy, 460 F.3d at 145 (quotation omitted). Alston fails to cite competent, non-conclusory evidence in support of his objections to the defendants' cited factual evidence.[2]

---

[2] In February 2019, the Massachusetts Civil Service Commission ("CSC") concluded that the Town did not have just cause to terminate Alston under the state civil service law. See Mass. Gen. Laws ch. 31, § 1. Alston argues that the CSC's findings and conclusions are binding on this Court, and his opposition to summary judgment relies heavily on the CSC decision. However, federal courts are not required to give deference to the findings of state administrative agencies unless they satisfy the necessary elements of issue preclusion: (1) the issues raised in the two actions are the same; (2) the issue was actually litigated in the earlier action; (3) the issue was resolved by a valid and binding final judgment; and (4) the determination of the issue was necessary to that judgment. See Jones v. City of Bos., 845 F.3d 28, 33 (1st Cir. 2016); Manganella v. Evanston Ins. Co., 700 F.3d 585, 591 (1st Cir. 2012). Here, the CSC decision does not require deference because it does not satisfy these requirements. Alston makes no developed argument to the contrary.

Count I of the Fourth Amended Complaint is asserted against the Town, its Board of Selectmen,[3] Town Counsel, and Human Resources Director. It alleges that the Town had "a policy, practice, and custom of opposing racial equality, enforcing racial subordination, engaging in affirmative action and favoritism towards white residents and employees, and retaliating against persons who protest racial discrimination." (Fourth Am. Compl. at ¶ 128 (dkt. no. 230).) In particular, "the Town Defendants sought through the execution of the policy to deter Plaintiff and others in Brookline from enjoying his First Amendment rights to freedom of speech and to petition the government for redress of grievances," entitling him to recover damages under 42 U.S.C. §§ 1981[4] and 1983. (Id. at ¶¶ 129–131.)

Count II is asserted against individual defendants Betsy DeWitt, Kenneth Goldstein, Neil Wishinsky, Nancy Daly, Sandra DeBow, and Joslin Murphy, all of whom are alleged to have "sought through the execution of the policy to deter the Plaintiff and others in Brookline from enjoying their First Amendment rights to freedom of speech and to petition the government for redress of grievances." (Id. at ¶ 135.) The individual defendants are alleged therefore to have "violated 42 U.S.C. § 1981, § 1983, and § 1985 by retaliating against Plaintiffs [sic] for opposing the Town's unconstitutional and racist policy" and "by discriminating against Plaintiff on the basis of race." (Id. at ¶¶ 136–137.)

Alston's factual claims appear to be that the Town and individual defendants took adverse employment action against him in retaliation for his persistent claims of official racial

---

[3] The complaint refers to the "Board of Selectmen." The official title used by the Town is "Select Board."
[4] The First Circuit has held that there is no private right of action against governmental defendants under § 1981. The sole remedy for claims against governmental actors for deprivation of civil rights is suit under § 1983. Buntin v. City of Bos., 857 F.3d 69, 70–71 (1st Cir. 2017) (recognizing the continued validity of Jett v. Dallas Indep. School Dist., 491 U.S. 701 (1989)).

discrimination against him and other minority persons. They are thus a mix of claims of employment discrimination and viewpoint discrimination. Since he and his lawyer were quite persistent about expressing Alston's point of view so that he was not "silenced," the present claims are best analyzed under the rubric of employment discrimination.

For claims under §§ 1981 and 1983, when employment discrimination is at issue, a court will analyze the claims using the standards applicable to suits brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Powell v. City of Pittsfield, 143 F. Supp. 2d 94, 114 (D. Mass. 2001) (citing T & S Serv. Assocs., Inc. v. Crenson, 666 F.2d 722, 724 n.2 (1st Cir. 1981)).

There is no direct evidence of racial discrimination here; Alston's claims are that the defendants, while ostensibly acting without discriminatory intent, were actually purposefully punishing him for his complaints about their racially discriminatory practices or omissions. His discrimination claims are thus properly analyzed under the familiar McDonnell Douglas burden-shifting framework. See Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 33 (1st Cir. 2001). Alston "must carry the initial burden . . . of establishing a prima facie case of racial discrimination." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The defendants then have the burden of articulating a legitimate, nondiscriminatory reason for any adverse employment action. Cherkaoui v. City of Quincy, 877 F.3d 14, 24 (1st Cir. 2017) (quotation omitted). If the defendants carry that burden the plaintiff must then show that the proffered reason is a pretext and that the true reason for their acts or omissions was discriminatory. See id. (quotation omitted).

Let it be assumed, as it often is, that Alston has satisfied the first step of the analysis and has established a prima facie case. The Town defendants and individual defendants, in turn, have

articulated legitimate non-discriminatory and non-retaliatory reasons for any adverse employment actions, and they have supported that showing by evidence not subject to genuine dispute.[5]

Alston was evaluated both by a psychiatrist chosen by the Town[6] and, after his request for evaluation by a different doctor, an evaluation by a psychiatrist from the Massachusetts General Hospital was arranged. Both psychiatrists recommended essentially the same return-to-work conditions for Alston, and it is undisputed that Alston never complied with those conditions. Nor did he provide any conflicting opinion from another psychiatrist. The Town allowed Alston an extended time on paid leave to entice his cooperation with a psychiatric evaluation. The paid leave was ended only after Alston's continued refusals to cooperate with the return-to-work process, and his ultimate termination was only sought after months of his (and his lawyer's) refusals to comply with conditions for return to work suggested by both examining psychiatrists. The Town also afforded Alston a hearing on his proposed termination before a third-party hearing officer, who recommended his termination.

Against this, Alston has not produced evidence that would raise a triable dispute. His arguments are long on rhetoric but devoid of record evidentiary support. He has not presented

---

[5] A brief aside about Alston's prior state court suit is necessary. He commenced his Superior Court suit in June 2013, and it was dismissed with prejudice a little over a year later. His claims of discrimination and retaliation in that case were rooted in his dissatisfaction with the Town's response to the incident in 2010 in which a superior officer referred to him by using an offensive epithet. This Court previously ruled that Alston was foreclosed from asserting in this case claims that were or were available to be asserted in the prior case. That ruling applied to any claim that was available to be asserted prior to July 8, 2014, the date of the dismissal of the state case with prejudice. The "Leave" incident that led to his being suspended occurred in December 2013, while the state action was pending, and it was available to him to assert any claim arising from that incident in that suit. But even if the claim-splitting foreclosure ruling had not been made or was erroneous, there is no basis in the events between late December 2013 and mid-July 2014 for a conclusion other than the one discussed in the text for the reasons discussed therein.

[6] For purposes of this discussion, the term "Town" serves as a proxy for all the defendants except the union.

evidence on the basis of which a trier of fact could conclude that the reasons asserted by the Town were a pretextual excuse for an actually discriminatory intent and action.

Nor has Alston pointed to admissible evidence that would support a factfinder's conclusion that the Town was punishing him in retaliation for his expressions of criticism. To the contrary, the record reflects that he repeatedly declined to attend meetings he was invited to or present evidence of his own about his ability to return to work on the conditions recommended by the psychiatrists. Even in the middle of his termination hearing, the Town offered to consider his return to work if he was willing to abide by the recommended conditions, but *he* declined.

### **III.**     **Conclusion**

For the foregoing reasons, the motions of the Town and Town defendants (dkt. no. 365) and of the individual defendants (dkt. no. 363) are both GRANTED. Judgment shall be entered in their favor.

It is SO ORDERED.

                                            /s/ George A. O'Toole, Jr.
                                            Senior United States District Judge