UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-13987-GAO

GERALD ALSTON,
Plaintiff,

v.

TOWN OF BROOKLINE, MASSACHUSETTS, BROOKLINE BOARD OF SELECTMEN,
BETSY DEWITT, KENNETH GOLDSTEIN, NANCY DALY, NEIL WISHINSKY,
BERNARD GREENE, BEN FRANCO, NANCY HELLER, SANDRA DEBOW, JOSLIN
MURPHY, each of them in his or her individual and official capacity, and LOCAL 950,
INTERNATIONAL ASSOCIATION OF FIREFIGHTERS,
Defendants.

OPINION AND ORDER
April 2, 2020

O'TOOLE, S.D.J.

This is a civil rights action brought by the plaintiff, Gerald Alston, a former firefighter for

the Town of Brookline, asserting claims of racial discrimination and retaliation against the Town,

various Town officials, and the firefighter's union, Local 950, International Association of

Firefighters ("Union"). All defendants have moved for summary judgment in their favor. This

Opinion and Order addresses the motion for summary judgment by the Union (dkt. no. 390). A

separate Opinion and Order addresses the motions by the Town and the individual defendants.

**I.** **Factual Background**

The summary judgment record in this case is extensive. The following facts are taken from

that record and are not subject to genuine dispute:

Alston is an African American. He was employed by the Town as a firefighter beginning

in 2002. Although Alston's grievance concerns his belief that the Brookline fire department was

rife with racial discrimination, his legal claims are based essentially on two separate incidents arising in connection with his employment in the fire department.

In 2010 a white superior officer in the fire department left a message on Alston's telephone that referred to him using an ugly racial epithet. Alston was greatly upset by that message and demanded that the Town take disciplinary action against the employee who left the message. The offending employee requested and was provided legal representation by the Union in connection with his disciplinary proceedings. The Town found that the employee had acted wrongfully and suspended him for a brief period, but Alston was not satisfied that the discipline imposed was sufficient. The employee, after serving the suspension, was later promoted. It is this incident, and Alston's vigorous disagreement with it, that hangs over this entire controversy.

In 2013 Alston brought suit against the Town of Brookline in the Massachusetts Superior Court alleging racial discrimination and retaliation under the State's anti-discrimination statute, Massachusetts General Laws Chapter 151B, Section 4. The incident described above was central to the claims in that suit. Alston did not assert any claim against the Union. The case was eventually dismissed with prejudice in July 2014 as a sanction for Alston's failure to comply with discovery obligations.

On December 19, 2013, Alston noticed that someone had written the word "Leave" in accumulated dust on the side of one of the fire trucks in the station. He understood that to have been directed at him, and he reacted angrily. He showed it to two other firefighters and made some remarks about shooting people and "going postal" that could reasonably have been understood as threats of violent action. As a result, Alston was placed on leave pending an investigation into his shooting remarks. The investigation included obtaining an evaluation of Alston's "fitness for duty" by a psychiatrist retained by the department, Dr. Andrew Brown. After interviewing Alston and

consulting with Dr. Michael Kahn, Alston's own treating psychiatrist, Dr. Brown in substance recommended that Alston not be returned to duty until a stable plan for addressing his anger and potential for outbursts was put in place.

During this time, Alston was represented by counsel in connection with the state court action. There is no evidence in the record that either Alston or his lawyer requested the Union to represent him regarding his employment status with the Town.

On May 14, 2014, Fire Chief Paul Ford, Director of Human Resources Sandra DeBow, and Town Counsel Joslin Murphy met with Alston and his attorney at the time. Paul Trahon also attended as a Union observer. At the meeting, Alston was given a report by DeBow and Chief Ford which summarized investigatory findings concerning the "Leave" incident and Alston's shooting comments. The report outlined the conditions suggested by Dr. Brown to be satisfied before Alston would be deemed fit for duty: (1) receiving ongoing psychiatric treatment, (2) permitting Brookline's occupational health nurse to monitor treatment progress, (3) completing an anger management course, (4) passing a fitness for duty evaluation, and (5) submitting to random drug testing for twenty-four months.[1]

Alston recalls objecting to the Town's proposal, while Trahon recalls that Alston was in agreement with it. Assuming Alston's recollection is correct, it is nonetheless undisputed that Alston never asked the Union to file a grievance on his behalf regarding either the proposed discipline or the return to work plan. Alston served a two-day suspension for violating workplace

---

[1] Some medical records indicated that Alston had at least occasionally used marijuana and cocaine.

safety norms by making his shooting comments. It is worth noting that this is substantially the same discipline as had been imposed on the superior officer for the 2010 racial slur incident.

There is no evidence that after the meeting on May 14, 2014, Alston ever asked Trahon for additional Union representation or requested the Union to file any grievance on his behalf. Alston did contact Trahon at some point after the May 2014 meeting to request a copy of either the Union by-laws or the collective bargaining agreement between the Union and the Town.[2] Although it took a second request, Alston received both documents by certified mail.

A second fitness for duty evaluation by Dr. Brown was scheduled in the fall of 2014, but his new (and present) lawyer objected to further examination by Dr. Brown. At the lawyer's request, the Town arranged for Alston to be evaluated by a psychiatrist not affiliated with the Town. In February 2015, Dr. Marilyn Price, a psychiatrist practicing at the Massachusetts General Hospital, interviewed Alston and submitted a detailed written assessment in mid-March. Dr. Price concluded that Alston should be returned to duty only if there could be "workplace accommodations" that would relieve the stress he had felt about what he perceived was unfair treatment by department personnel. Her suggested accommodations were similar to Dr. Brown's.

Alston never complied with the fitness for duty requirements recommended by the psychiatrists and was subsequently terminated by the Town.

## II.    Discussion

"Summary judgment is appropriate where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no

---

[2] Alston could not recall which documents he requested.

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Audette v. Town of Plymouth, MA, 858 F.3d 13, 19 (1st Cir. 2017) (quoting Mulloy v. Acushnet Co., 460 F.3d 141, 145 (1st Cir. 2006)). Although the record is construed in the light most favorable to the non-moving party, the Court need not consider "conclusory allegations, improbable inferences, [or] unsupported speculation." Mulloy, 460 F.3d at 145 (quotation omitted). Alston fails to cite to competent, non-conclusory evidence in support of his objections to the defendant's cited evidence.[3]

Alston alleges that the Union is liable to him under the civil rights causes of action authorized by 42 U.S.C. §§ 1981, 1983, and 1985.

A.    Section 1983 Claim

Alston alleges that the Union violated § 1983 by retaliating against him because he protested racist conduct by other firefighters. He asserts that the Union failed to file grievances on his behalf and failed to provide him fair representation in the same way it would have were he a white Union member.

Section 1983 protects every "'[c]itizen of the United States or other person within [its] jurisdiction' against the deprivation of a federally secured right by a person acting under the color of state law." Doucette v. Georgetown Pub. Sch., 936 F.3d 16, 23 (1st Cir. 2019) (quoting 42 U.S.C. § 1983). "[P]rivate actors may align themselves so closely with either state action or state

---

[3] In February 2019, the Massachusetts Civil Service Commission ("CSC") concluded that the Town did not have just cause to terminate Alston under the civil service law. See Mass. Gen. Laws ch. 31, § 1. Alston argues that the CSC's findings and conclusions are binding on this Court and his opposition to summary judgment relies heavily on the CSC decision. However, federal courts are not required to give deference to the findings of state administrative agencies unless they satisfy the elements of issue preclusion: (1) the issues raised in the two actions are the same; (2) the issue was actually litigated in the earlier action; (3) the issue was determined by a valid and binding final judgment; and (4) the determination of the issue was necessary to that judgment. See Jones v. City of Bos., 845 F.3d 28, 33 (1st Cir. 2016); Manganella v. Evanston Ins. Co., 700 F.3d 585, 591 (1st Cir. 2012). Here, the CSC decision does not require deference as it does not satisfy the requisite elements and Alston makes no developed argument to the contrary.

actors that the undertow pulls them inexorably into the grasp of § 1983." <u>Roche v. John Hancock</u>

<u>Mut. Life Ins. Co.</u>, 81 F.3d 249, 253–54 (1st Cir. 1996). However, labor unions "have traditionally

been considered private, not public, entities." <u>Hovan v. United Bhd. of Carpenters & Joiners of</u>

<u>Am.</u>, 704 F.2d 641, 642 (1st Cir. 1983).

The factual record does not support a conclusion that the Union was in any way acting

under the color of state law with respect to whatever it did or did not do regarding Alston. For

example, the Union's representation of a member facing discipline for workplace misconduct

because of his use of a racial epithet placed it in a more or less adversarial position to the Town.

There is simply no evidence that would raise a genuine issue of fact that the Union became so

allied with the Town's actions toward Alston that it effectively became a state actor. In the absence

of any such evidence of state action on the part of the Union, the § 1983 claim cannot be sustained.

B.    Section 1985 Claim

Section 1985(3) prohibits "two or more persons in any State or Territory [from] conspir[ing

to] . . . depriv[e] . . . any person or class of persons of the equal protection of the laws." 42 U.S.C.

§ 1985(3). To prove a claim under § 1985(3), four elements must be established:

> (1) two or more persons must conspire, (2) to deprive, either directly or indirectly,
> any person or class of persons of the equal protection of the laws or of equal
> privileges and immunities under the laws, (3) one or more of the conspirators must
> have done or caused to be done an act in furtherance of the object of the conspiracy,
> and (4) the plaintiff must have suffered either an injury to person or property or a
> deprivation of a constitutionally protected right or privilege as a result of the
> conspiracy.

<u>Andrade v. Jamestown Hous. Auth.</u>, 82 F.3d 1179, 1192 (1st Cir. 1996). There is no evidence that

the Union and the Town were conspiring against Alston to retaliate or discriminate against him.

As is reflected at least indirectly in the record, the Town and Union frequently disagree and are on

different sides of an issue. It is possible to conceive circumstances in which they might unite and

act in a way that would violate the prohibition established by § 1985. However, even assuming that the Town defendants acted in a way to deprive Alston of equal protection of the law, there is no evidence in the extensive record that could support a conclusion by a rational trier of fact that the Union conspired with them to deprive Alston of his rights. As noted above, Alston did not seek the Union's assistance in pressing his case with the Town. At the very most, this made the Union a non-participant in the controversies between Alston and the Town. There is no actual, as opposed to imagined, evidence of a conspiracy between the governmental officials and the Union.

    C.      Section 1981 Claim

To state a claim under § 1981, "a plaintiff must show (1) that he is a member of a racial minority, (2) that the defendant discriminated against him on the basis of his race, and (3) that the discrimination implicated one or more of the activities enumerated in the statute." Garrett v. Tandy Corp., 295 F.3d 94, 98 (1st Cir. 2002). One such enumerated activity in the statute is the making and enforcing of contracts. See 42 U.S.C. § 1981. Alston argues the Union violated § 1981 by failing to enforce its contract with him, a black man, on an equal basis as it would have the Union's white members. Alston contends the Union participated in and tacitly acquiesced to discriminatory and retaliatory conduct against Alston in violation of its contractual duty of fair representation to him. Specifically, Alston argues that the Union retaliated against him because he protested racist conduct within the fire department. In particular, he alleges that the Union failed to file grievances on his behalf and failed to represent him fairly, in contrast with its actions on behalf of white Union members.

The familiar McDonnell Douglas burden-shifting framework used in employment discrimination cases brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., applies in addressing discrimination and retaliation violations of § 1981. Powell v. City of

Pittsfield, 143 F. Supp. 2d 94, 114 (D. Mass. 2001) (citing T & S Serv. Assocs., Inc. v. Crenson, 666 F.2d 722, 724 n. 2 (1st Cir. 1981)). A plaintiff "must carry the initial burden . . . of establishing a prima facie case of racial discrimination." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). For a claim of retaliation, a plaintiff must show that (1) he engaged in a protected activity, (2) he subsequently suffered an adverse employment action, and (3) the two are causally linked. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004). In the § 1981 context as here, the Union then has the burden of articulating a legitimate, nondiscriminatory reason for any adverse action. See Cherkaoui v. City of Quincy, 877 F.3d 14, 24 (1st Cir. 2017) (quotation omitted). It falls then to the plaintiff to offer evidence that the proffered reason for action or inaction (as the case may be) is actually pretextual and that the true reason was discriminatory. See id. (quotation omitted).

Alston alleges that the Union retaliated against him as a result, and in retribution for, his reporting another employee's use of a racial slur in 2010. Alston argues that the Union negotiated grossly insufficient discipline from the Town on behalf of that employee, and the Union did not represent Alston with the same vigor when he was being investigated in 2013. Alston also argues the Union failed to oppose the Town's disciplinary action against him and his return to work conditions.

First, there are statute of limitations issues with the allegations that revolve around the 2010 racial slur. "Although defendants have not raised the statute of limitations defense, the Court is empowered to consider the issue *sua sponte*." McGuigan v. Conte, 629 F. Supp. 2d 76, 84 n.12 (D. Mass. 2009). For federal civil rights claims under §§ 1981, 1983, and 1985, "the forum state's statute of limitations for personal injury claims" is used. See Rodríguez-García v. Mun. of Caguas, 354 F.3d 91, 96 (1st Cir. 2004). In Massachusetts, the statute of limitations period is three years.

See Mass Gen. Laws ch. 260, § 2A; Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001). Alston failed to timely raise any claims against the Union regarding the 2010 events. This action was filed more than three years after those events.

Substantively, the record lacks evidence that a rational factfinder could rely on to find that the Union retaliated against Alston for any protected activity or otherwise *itself* discriminated against Alston. Alston argues that the negotiated modest suspension for another employee and his subsequent promotions demonstrate that the Union did not take Alston's allegations of racism seriously and therefore amount to a retaliatory rebuke.

There are two major problems with this argument. First, under the National Labor Relations Act, the Union owed the employee facing discipline a duty of fair representation. See 29 U.S.C. § 151 *et seq.*; see also United Steelworkers of Am. v. Rawson, 495 U.S. 363, 372 (1990). To be sure, the Union cannot "play favorites" and apply different standards to similar cases. But the record evidence establishes here that Alston's discipline for his shooting statements was not substantially disparate from the discipline of the employee who made the racist comment. As a matter of fact, it was the same—a two-day suspension. Second, the record indicates that as to discipline for the shooting comments, Alston did not ask the Union to file a grievance or otherwise intervene to represent him after the May 2014 meeting with Town officials. It cannot be said to have been materially discriminatory for the Union not to have acted when it appeared Alston did not want it to act on his behalf.

The evidence does not support a factual conclusion that the Union interfered in a material way with Alston's right "to make and enforce contracts."

### III.     Conclusion

For the reasons stated herein, the motion for summary judgment (dkt. no. 390) is

GRANTED and judgment shall enter in favor of the Union.

It is SO ORDERED.

    __ /s/ George A. O'Toole, Jr._____
Senior United States District Judge