# United States Court of Appeals
## For the First Circuit

No. 20-1435

IN RE APPEAL OF BROOKS A. AMES.

GERALD ALSTON,

Plaintiff,

v.

STANLEY SPIEGEL,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]
[Hon. M. Page Kelley, U.S. Magistrate Judge]

Before

Lynch and Selya, Circuit Judges,
and Laplante,* District Judge.

Brooks A. Ames, pro se, for appellant.
Naomi R. Shatz and Martin R. Rosenthal, with whom David Duncan
and Zalkind Duncan & Bernstein LLP were on brief, for appellee.

April 6, 2021

---

* Of the District of New Hampshire, sitting by designation.

      **SELYA**, <u>**Circuit Judge**</u>.  Appellant Brooks A. Ames, an attorney, challenges an order of the district court imposing a sanction against him under Federal Rule of Civil Procedure 11. Discerning no abuse of discretion, we affirm.

**I.    BACKGROUND**

      We briefly rehearse the relevant facts and travel of the case.  Ames is a Massachusetts lawyer who represents Gerald Alston, a black man who formerly worked as a firefighter.  On December 1, 2015, Ames brought suit on Alston's behalf against a coterie of defendants, including the town of Brookline, Massachusetts (the Town), the Town's Board of Selectmen (the Board), and certain individuals affiliated with the Town (among them, members of the Board, the Town's counsel, and its human resources director).  Of particular pertinence for present purposes, Ames named Stanley Spiegel as one of the defendants.

      The complaint alleged that Alston's civil rights had been infringed in violation of 42 U.S.C. §§ 1981, 1983, and 1985. The Town was alleged to have "maintain[ed] its racist and unconstitutional policies by providing the administration wide latitude to covertly implement and enforce them."  The Board was alleged to have "blocked citizens from exposing and changing the Town's unconstitutional policy."  As to Spiegel, the complaint alleged that he was a white resident of Brookline, who served as "an elected town meeting member and an appointed member of the

- 2 -

advisory committee."[1]    In addition, the complaint alleged that
Spiegel had "frequent contact with the Board of Selectmen both
formally and informally."  It further alleged that a member of the
Board, Nancy Daly, distributed to the public copies of a "letter
to the editor" that was about to be published in a local newspaper.
The letter, which Alston claimed was "more derogatory" than the
version that was ultimately published, was purportedly authored by
a retired black firefighter.

     The complaint then alleged that the letter, which
"attacked Mr. Alston's courage and credibility," was a means of
retaliating against Alston.  It went on to allege that, on the
following day, the newspaper published the letter and Spiegel
"distributed" copies of the published version to other Town Meeting
members in order to "provid[e] diversity of opinion" regarding
Alston's lawsuit.

     In December of 2014 — according to the complaint — the
Board retaliated against Alston for publicly protesting his

---

[1] The complaint offered little information about the status
of Town Meeting members, but the magistrate judge took judicial
notice of the fact that the Town has 240 Town Meeting members at
any given time.  See Alston v. Town of Brookline (Alston I), No.
15-13987, 2016 WL 5745091, at *16 n.17 (D. Mass. Sept. 30, 2016).
The record is equally sparse as to the precise nature and function
of the "Advisory Committee."  There is some indication, though,
that the Advisory Committee is linked to the Town's governmental
structure and that one of its roles is to approve financial
settlement agreements to which the Town is a party (including
settlements of race-discrimination claims).

treatment after he had reported a racial slur uttered by a superior officer.  Relatedly, the complaint alleged that the Town leaked Alston's personnel file to Spiegel and others in an effort to "smear" Alston and "undermine his support in the community."  At a public meeting, Spiegel allegedly stated that he had access to Alston's personnel file in his capacity as a Town Meeting member. He also allegedly told a person wearing an "I support Gerald Alston" sticker that she would not support Alston if she knew the "real story" contained in Alston's personnel file.  In the same conversation, Spiegel allegedly represented that he was speaking "on behalf of the Town."  Spiegel also claimed (falsely, according to the complaint) that two black firefighters had told him that they did not support Alston.

Both the Town and the Board filed motions to dismiss. See Fed. R. Civ. P. 12(b)(6).  Ames parried by filing a first amended complaint (the FAC) on Alston's behalf.  See Fed. R. Civ. P. 15(a)(1)(B).  The amendments, however, neither added new facts concerning Spiegel nor altered the allegations against him. Various defendants (including Spiegel) filed motions to dismiss, which the district court referred to a magistrate judge.  See Fed. R. Civ. P. 73(a).  Spiegel also moved for Rule 11 sanctions, asserting, among other things, that Ames had failed to show either that the claims against him were grounded in fact or warranted by existing case law (or for that matter, by a nonfrivolous argument

for extending existing case law). See Fed. R. Civ. P. 11(b).
Spiegel specifically noted that it was never alleged that he either
took "any adverse action against Alston" or that he was "in a
position to do so." Indeed, he was not alleged to "have ever met
or spoken to Alston or interacted in any way with him." Finally,
Spiegel pointed out that even though the claims against him
required a showing of "racial animus or invidiously discriminatory
animus," Alston had not made any such showing.

After hearing arguments on Spiegel's motion to dismiss,
the magistrate judge recommended dismissing the claims against
him. In her report and recommendation (the 2016 R&R), she advised
the district court to dismiss the suit against Spiegel with
prejudice for failure to state a claim upon which relief can be
granted. Fed. R. Civ. P. 12(b)(6). The magistrate judge wrote
that the claims against Spiegel "would not be solved by clearer
pleading" because "Spiegel's innocuous actions simply have not
violated any of Alston's rights."

Importantly, the 2016 R&R explained in detail the legal
requirements for each of Alston's claims against Spiegel. It also
sent up a red flag, warning that:

> Counsel should be sure when filing another
> complaint that there are allegations
> sufficient to make out any asserted claims and
> that he plainly states them with regard to
> particular defendants. By signing the
> pleading, counsel is certifying his belief
> that "the claims, defenses, and other legal

> contentions are warranted by existing law or
> by a nonfrivolous [legal] argument . . . ."
> Fed. R. Civ. P. 11(b)(2).

Despite this warning, the 2016 R&R did not address Spiegel's motion for sanctions.

Ames objected to the 2016 R&R. On de novo review, see Fed. R. Civ. P. 72(b)(3), the district court overruled the objections and adopted most of the magistrate judge's recommendations. The exception, though, was the recommendation that the claims against Spiegel be dismissed with prejudice. Because Alston was granted leave to re-plead his claims against all the other defendants, the district court thought "it [was] fair to give him a chance to replead his claims against Spiegel."

Ames proceeded to file a second amended complaint (the SAC) on Alston's behalf. The SAC added a few new allegations with respect to Spiegel. It asserted, in a conclusory fashion, that "Spiegel violated Mr. Alston's rights by enforcing the [discriminatory] Policy in concert with the Town." It also asserted that "until named as a defendant in this lawsuit," Spiegel had acted as an "unofficial surrogate" for the Board by "defending [its] conduct publicly and attacking perceived and actual critics of the Board and the Town." For good measure, the SAC asserted that Spiegel was "frequently in consultation with individual members of the Board."

The SAC also purported to clarify Spiegel's handling of the letter to the editor and his confrontation with the Alston supporter. It alleged that, in the email in which Spiegel distributed the letter, he directed Town Meeting members to a quotation from Selectwoman Daly that had appeared in the local newspaper which "cautioned about a rush to judgment before more facts about [Alston's case] could be made public." According to the SAC, Spiegel noted that he had distributed the letter for "some additional insight" and expressed the view that Town Meeting members ought not to attack the Town based solely on Alston's side of the story. As a final shot, the SAC alleged that Spiegel became "extremely agitated" when he was questioned about his statements to the Alston supporter, put his face close to hers, raised his voice, shouted "I'm disgusted," and ended the conversation.

Spiegel again moved both to dismiss and for sanctions. The magistrate judge, unswayed by the added allegations, continued to recommend that the district court dismiss the claims against Spiegel with prejudice. In her report and recommendation (the 2017 R&R), she concluded that Alston and his attorney had "largely ignored this court's earlier findings as they pertain to defendant Spiegel, and simply recycled portions of the first amended complaint with cosmetic changes."

Alston objected to this recommendation, but the district court adopted it and dismissed with prejudice the claims against

Spiegel.  See Alston v. Town of Brookline (Alston II), No. 15-13987, 2017 WL 1536213, at *1 (D. Mass. Apr. 26, 2017).  Despite being "provided an opportunity to cure the deficiencies of the first amended complaint," the court wrote, Alston had failed.  Id.

The magistrate judge subsequently held a hearing on Spiegel's motion for sanctions and ruled that sanctions were in order.  As part of her rationale, the magistrate judge stated that "the minor changes made from the first to the second amended complaint did not make any difference in the viability of the claims against Spiegel."  She recognized that the district court "reasonably gave [Alston] the opportunity to replead against Spiegel," but declared that such an opportunity was not "a license simply to file a frivolous case for the second time."  Ames objected, but the district court agreed that a sanction was warranted.  See Alston v. Town of Brookline (Alston III), No. 15-13987, 2017 WL 3387132, at *1 (D. Mass. Aug. 7, 2017).  It ordered Ames to pay $20,396.61 as a sanction, concluding that such a dollar amount would deter future misconduct.  See Alston v. Town of Brookline (Alston IV), No. 15-13987, 2019 WL 117605, at *1 (D. Mass. Jan. 7, 2019).  This timely appeal followed.

Meanwhile, Alston had appealed the dismissal of his claims against Spiegel.  While the instant appeal was pending, we affirmed the dismissal of Alston's claims against Spiegel.  See Alston v. Spiegel, 988 F.3d 564, 569 (1st Cir. 2021).

- 8 -

## II.  ANALYSIS

Ames complains that the district court blundered by "unfairly" levying a sanction under circumstances that could "chill the development of civil rights law." He offers three contentions in support of this plaint.[2] First, he contends that Alston's claims against Spiegel had a sufficient factual basis to avoid being classified as frivolous. To buttress this contention, he insists that because the district court dismissed the FAC without prejudice and allowed Alston to re-plead as to Spiegel, the claims could not have been sanctionable. Second, he contends that the claims are anchored in a nonfrivolous argument for the extension of existing law. Third, he contends that, in sanctioning him for re-pleading the claims against Spiegel, the district court treated the magistrate judge's warning (in the 2016 R&R) not merely as a red flag but, rather, as "effectively immuniz[ing]" the magistrate judge's appraisal of those claims from appeal.

It is apodictic that we review a district court's decision to impose Rule 11 sanctions for abuse of discretion. See Protective Life Ins. Co. v. Dignity Viatical Settlement Partners, L.P., 171 F.3d 52, 56 (1st Cir. 1999); Navarro-Ayala v. Nunez, 968 F.2d 1421, 1425 (1st Cir. 1992). We have said that an abuse of discretion "occurs when a material factor deserving significant

---

[2] Ames does not challenge the amount of the sanction.

weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them." Anderson v. Beatrice Foods Co., 900 F.2d 388, 394 (1st Cir. 1990) (quoting Fashion House, Inc. v. K Mart Corp., 892 F.2d 1076, 1081 (1st Cir. 1989)). Mindful that sanctions determinations are context-dependent, "our review is deferential—but not reflexively acquiescent." Protective Life, 171 F.3d at 56. Consequently, the sanctioned party "bears a formidable burden" when attempting to show that the sanctioning court abused its discretion. Navarro-Ayala, 968 F.2d at 1425.

Before addressing Ames's contentions, some stage-setting is useful. Under Rule 11, a court may impose sanctions on a lawyer "for advocating a frivolous position, pursuing an unfounded claim, or filing a lawsuit for some improper purpose." CQ Int'l Co. v. Rochem Int'l, Inc., USA, 659 F.3d 53, 60 (1st Cir. 2011). A claim is frivolous when it is "either not well-grounded in fact or unwarranted by existing law or a good faith argument for an extension, modification or reversal of existing law." Cruz v. Savage, 896 F.2d 626, 632 (1st Cir. 1990). In determining whether a lawyer has offended Rule 11, a court generally must use an objective standard, asking what is reasonable under the circumstances. See id. at 631. Factors to be considered include "the complexity of the subject matter, the party's familiarity

- 10 -

with it, the time available for inquiry, and the ease (or difficulty) of access to the requisite information." <u>Navarro-Ayala</u>, 968 F.2d at 1425. Typically, "some degree of fault is required, but the fault need not be a wicked or subjectively reckless state of mind; rather, an individual 'must, at the very least, be culpably careless to commit a violation.'" <u>Roger Edwards, LLC</u> v. <u>Fiddes & Son Ltd.</u>, 437 F.3d 140, 142 (1st Cir. 2006) (quoting <u>Young</u> v. <u>City of Providence ex rel. Napolitano</u>, 404 F.3d 33, 39 (1st Cir. 2005)).

It is against this backdrop that we address Ames's contentions.

Ames seeks to find safe harbor in the district court's decision to dismiss the FAC without prejudice and its concomitant declination to impose sanctions at that time. In Ames's view, the ultimate dismissal of Alston's claims against Spiegel "could not, by itself, warrant sanctions unless the claims were frivolous in the first place." This is particularly true, Ames suggests, because he "did not disregard a statute or clear First Circuit or Supreme Court precedent."

We agree with Ames's foundational premise: "[t]he mere fact that a claim ultimately proves unavailing, without more, cannot support the imposition of Rule 11 sanctions." <u>Protective Life</u>, 171 F.3d at 58. Here, however, the case for sanctions goes well beyond the mere fact of dismissal.

In this instance, the key question is not whether Ames's pleading of Alston's claims disregarded a statute or circuit precedent directly on point. Rather, it is whether any reasonable attorney, looking at the additional matters pleaded in the SAC, "would have believed that he had any evidence to support [his] claim[s]" against Spiegel. Nyer v. Winterthur Int'l, 290 F.3d 456, 461 (1st Cir. 2002). The district court answered this question in the negative, and so do we.

The allegations in the FAC, insofar as they pertained to Spiegel, chronicled only two events: his distribution of copies of the letter to the editor and his confrontation with the Alston supporter. In the 2016 R&R, the magistrate judge concluded that the facts pleaded in the FAC concerning these events "failed to state a claim against Spiegel under any actionable legal theory." (Emphasis in original). The magistrate judge further concluded that the FAC did not allege any actionable harm resulting from either event. After all, the letter had previously been published, and Spiegel's comments to the Alston supporter, while unflattering to Alston, were non-specific and had no bearing on Alston's situation. Nor did the FAC suggest that either of those two events were implicated in Alston's employment discrimination or retaliation claims. In point of fact, the claims against Spiegel, as pleaded in the FAC, were so wide off the mark that the 2016 R&R

warned that the "failure to state a claim would not be solved by clearer pleading."

Notwithstanding this explicit warning, Ames elected to try again in the SAC. As relevant here, that complaint added nothing of consequence.[3] Nothing in the SAC meaningfully amplified Ames's earlier description of Spiegel's conduct and, thus, the SAC failed to transmogrify such conduct into actionable misconduct. What is more, the SAC — even when read in the light most favorable to Alston — failed to forge any link between Spiegel's alleged conduct and the adverse employment actions of which Alston complains (termination of employment and workplace harassment). Neither the Town Meeting members nor the Alston supporter are alleged to have any connection to Alston's employment.

The SAC's shortcomings do not end there. As to Spiegel, the SAC blithely ignored clear, widely available pleading requirements for discrimination and retaliation claims. Take, for example, the claims under 42 U.S.C. § 1981. "[S]ection 1981

---

[3] To the extent that the SAC contained new allegations, they were nothing more than window-dressing. Conclusory allegations claiming that Spiegel had acted as an unofficial surrogate for the Board or had frequently consulted with Board members are not entitled to any weight. See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (explaining that appellate courts need not credit "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when reviewing the dismissal of a complaint). So, too, allegations such as those attributing a state of agitation to Spiegel when questioned about his statements to the Alston supporter or suggesting that he raised his voice add nothing to the Rule 11 calculus.

affords relief when racial discrimination precludes a plaintiff from entering a contractual relationship or when racial discrimination impairs a plaintiff's existing contractual relationship." <u>Spiegel</u>, 988 F.3d at 572.  Even so, the SAC did not so much as allude to the existence of any contractual relationship, let alone allege that Spiegel's conduct impaired such a contractual relationship.  Last — but surely not least — the stunning fact is that, in a case about race discrimination, the SAC never so much as hinted that Spiegel's actions were motivated by racial animus.

The claims under 42 U.S.C. § 1983 are no less sketchy. To make out an equal protection claim under section 1983, Alston — at a bare minimum — had to "allege facts indicating that, compared with others similarly situated, he was selectively treated" based on his race.  <u>Id.</u> at 574-75.  The SAC, however, was utterly devoid of any reference to a person or persons similarly situated to Alston.  Such a glaring omission evinces either a disdain for honoring clearly established law or an ignorance of it.  In the same vein, the fact that the SAC failed even to suggest (in a race-discrimination case) that Spiegel's actions were motivated by racial considerations indicates culpable carelessness on Ames's part.  <u>See</u> <u>Roger Edwards, LLC</u>, 437 F.3d at 142.

Pointing to Alston's conspiracy claim under 42 U.S.C. § 1985, Ames asserts that this claim was not frivolous as against

Spiegel because the district court found it viable as against ten other defendants.[4] That finding, though, does not justify bringing a section 1985 claim against Spiegel. In terms of Rule 11, a pleader owes an independent responsibility to each defendant whom he chooses to sue. That a claim may be actionable as to one defendant does not excuse bringing that claim against another defendant as to whom the claim is obviously baseless. Cf. Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009) (explaining that, on motion to dismiss, court "must determine whether, as to each defendant, a plaintiff's pleadings are sufficient to state a claim on which relief can be granted") (emphasis in original). Alston's conspiracy claim against Spiegel does not come within a country mile of satisfying the Sanchez standard. Although, Ames alleges in his appellate briefing that Spiegel "acted in concert with Daly," no such concerted action is alleged in the SAC. In all events, no such allegation was made below. "If any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal." Teamsters, Chauffeurs, Warehousemen & Helpers Union, Loc. No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992).

---

[4] Because we find that this assertion lacks merit, we need not consider what effect, if any, it would have on the sanctions order if most of Alston's claims against Spiegel were groundless but one was not.

Ames also argues that, in granting Alston leave to amend
the FAC, the district court "effectively" sustained Alston's
objection to the 2016 R&R.  Building on this slipshod foundation,
Ames submits that because that objection argued that the
allegations against Spiegel in the FAC stated cognizable claims,
the district court must have thought that Alston's claims against
Spiegel were not frivolous.  This is pie in the sky, which melts
away under the lens of our inquiry.

The district court made pellucid that it had no wish to
cut off a litigant's rights prematurely.  In this spirit, the court
thought it "fair" to give Alston another bite at the cherry.
Alston I, 2016 WL 5745091, at *1.  In its brief grant of leave to
amend, the court did not (either expressly or by implication) adopt
Alston's objection.  Nor did the court in any way, shape, or form
suggest that it found the claims against Spiegel to be
nonfrivolous.  It simply gave Alston (through Ames) an opportunity
to re-plead if he saw fit.

Seen in this light, Ames's argument crumbles.  Even
though a district court deems a pleaded claim frivolous, it may
nonetheless give the pleader a chance to re-plead and add facts to
an amended complaint in order to breathe life into the claim.  But
leave to amend does not immunize an attorney who elects to amend
despite the absence of any nonfrivolous support for the amended
pleading.  When — as in this case — the pleader avails himself of

the opportunity to amend and files a new pleading, he does so at his peril and under the watchful eye of Rule 11. In this respect, civil rights cases are no different than other cases, and requiring an attorney to abide by the strictures of Rule 11 does not impermissibly chill his client's rights. See Silva v. Witschen, 19 F.3d 725, 733 n.15 (1st Cir. 1994) ("[W]e cannot agree that a groundless civil rights action is any less appropriate a candidate for Rule 11 sanctions than other groundless actions.").

Ames mounts another line of defense, distilled from the text of Rule 11(b). He notes that the rule provides, in pertinent part, that a party's claims may avoid sanctions if they are "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law." Fed. R. Civ. P. 11(b)(2). Overlooking the dearth of factual support for Alston's claims against Spiegel, Ames says that those claims were not the stuff to which sanctions should attach because they were based upon a nonfrivolous argument for the extension of the holding in Ray v. Ropes & Gray LLP, 961 F. Supp. 2d 344 (D. Mass. 2013). We do not agree.

In Ray — a race-discrimination case — the district court held that an employer's dissemination of "severely damaging information" about the plaintiff-employee to a media website could support a retaliation claim. Id. at 360. There, the Equal Employment Opportunity Commission (EEOC) had concluded that there

was probable cause to believe that the defendant (a law firm) had retaliated against Ray (a lawyer employed as an associate) for filing a charge of discrimination with the EEOC. See id. at 352. Ray sent the EEOC's findings to a number of people, including then-Dean Martha Minow of Harvard Law School. See id. An online publication learned of Ray's correspondence with Dean Minow and reached out to the defendant for comment. See id. In response, the defendant transmitted Ray's EEOC determination letter to the website, which posted it online. See id. The letter contained "a recitation of evidence, including detailed information about Ray's performance reviews and a description of the internal investigation of Ray and his reprimand by the firm for alleged criminal misconduct with a subordinate." Id.

In denying the defendant's motion for summary judgment on Ray's retaliation claim, the district court stated in dictum that "[t]he threat of dissemination of derogatory private information, even if true, would likely deter any reasonable employee from pursuing a complaint against his employer." Id. at 360. Attempting to draw an analogy, Ames argues that Spiegel made such a threat when he told an Alston supporter that she would not back Alston if she knew the "real story" contained in his personnel file. This attempted analogy falls flat.

As we observed when we rejected Alston's appeal, "Spiegel was neither Alston's employer nor a person alleged to be

acting in the employer's stead."[5] <u>Spiegel</u>, 988 F.3d at 576.  And, moreover, the SAC did not allege what the information in Alston's personnel file concerned, nor did it allege that any injurious information would come to light at Spiegel's direction.  Finally, the SAC never alleged a threat.

The short of it is that Spiegel was not Alston's employer, never disseminated any negative information about Alston from Alston's personnel file, and did not threaten any such dissemination.  These distinctions create so wide a gulf between <u>Ray</u> and the case at hand as to puncture Ames's boast that Alston's claims against Spiegel are based on a good-faith argument for an extension of <u>Ray</u>.  Put another way, the allegations contained in the SAC cannot reasonably be viewed as making a "nonfrivolous argument for extending" existing case law.  Fed. R. Civ. P. 11(b)(2); <u>see</u> <u>Roger Edwards, LLC</u>, 437 F.3d at 143 (affirming Rule 11 sanctions when deficiencies in appellant's motion "went well beyond debatable inference and colorable legal argument").

We need not linger long over Ames's assertion that he cannot be sanctioned for re-pleading the claims in the SAC after their original dismissal.  Otherwise, he laments, "[f]ew parties,

---

[5] The SAC did allege that, on one occasion, Spiegel purportedly "represented . . . that he was speaking on behalf of the Town."  This vague reference, standing alone, does not ground a reasonable inference that Spiegel was authorized to act for the Town in connection with Alston's employment.  <u>See</u> <u>Aulson</u>, 83 F.3d at 3.

even private attorney generals (or their counsel) enforcing civil rights laws, are likely to risk payment of up to $20,000 in sanctions to preserve appellate rights." This assertion comprises more cry than wool. It boils down to a claim that, by giving heavy emphasis to the magistrate judge's warning that Alston's claims against Spiegel "would not be solved by clearer pleading," the district court "effectively immuniz[ed]" the magistrate judge's appraisal from appeal.

On this point, Ames relies namely on our decision in Hill v. State Street Corp., 794 F.3d 227 (1st Cir. 2015). Specifically, he embraces the Hill court's admonition that it is important to "protect[] against the possibility that a district court could effectively immunize its decisions from review by declaring any appeal frivolous." Id. at 230.

Ames's reliance on Hill is mislaid. The facts of Hill are quite different — that case involved a requirement for an exorbitant bond as an adjunct to the right to appeal, see id. at 229 — and the case is readily distinguishable. More importantly, the claims against Spiegel are frivolous not because the magistrate judge predicted as much in the 2016 R&R but because — despite having had the benefit of a warning that the allegations against Spiegel failed to comply with the most basic of pleading requirements — Ames stubbornly persisted in rehashing essentially the same claims.

The SAC itself is a testament to the frivolousness of those claims. The meager facts that Alston alleged with respect to Spiegel were disconnected from the elements of the claims that he asserted — so much so that an objectively reasonable lawyer, mulling those facts, would necessarily have concluded that Alston could not offer any sufficient factual grounding for his claims against Spiegel. In addition, the legal regime that the pleaded facts sought to invoke was sufficiently clear that an objectively reasonable lawyer, taking stock of those facts, would necessarily have concluded that Alston had no nonfrivolous basis in law for his claims. These conclusions in no way depend either upon the magistrate judge's earlier appraisal or upon her warning — but that warning put Ames on notice that reiterating the claims, without any meaningful augmentation, would be culpably careless and, thus, land him in legal quicksand. See, e.g., Henderson v. Dep't of Pub. Safety & Corr., 901 F.2d 1288, 1294-95 (5th Cir. 1990); Collins v. Walden, 834 F.2d 961, 965-66 (11th Cir. 1987).

To say more would be to paint the lily. We conclude that the district court acted well within the ambit of its discretion when it found that Ames — even on his third try and in the face of explicit warnings — ignored obvious factual gaps and clear legal requirements in naming Spiegel as a defendant in the SAC. The ensuing sanction was adequately supported both in the facts and in the law.

## III. CONCLUSION

We respect a lawyer's zealous advocacy for his client. But that zeal, in turn, must respect the boundaries of appropriate advocacy. Here, Ames persisted in pursuing claims against Spiegel without an adequate basis in fact or in law despite a pointed warning from the magistrate judge. When — as in this case — zealous advocacy is based on nothing more than a wing and a prayer, it is sanctionable.

We need go no further. For the reasons elucidated above, the sanctions order is

**Affirmed**. Costs to appellee.